## McKEON *v.* BISBEE.

The interest of a miner in his mining-claim is property, and may be taken and sold under execution.

APPEAL from the District Court of the Eleventh Judicial District, County of El Dorado.

A statement of the facts appears in the opinion of the Court.

*Hall & Hume* for Appellants.

The only point in this case is upon the question whether mining-claims can be seized and sold under execution?

Appellant holds the affirmative, and says, first, that mining-claims are property; second, that such claims, when the property of an individual, may be sold to satisfy any judgment against him; because, third, mining-claims are not exempt by law from execution.

A mining-claim is a piece of land, supposed to contain in its soil or rock, gold, or other precious metal.   Its boundaries are usually marked by stakes, notices, ditches, or other evidence of the claim, and the possession of the claimant is actual *possessio pedis*.   As is the case with all mines, the land is chiefly valuable on account of the mineral contained within it.   The land must

McKeon *v.* Bisbee.

be marked out and taken possession of, before it can be called a "mining-claim."

A mining-claim, then, being land, is property. It is a thing which is in itself a "subject of right," and being land, is necessarily real property. The fact that the land contains mines, does not change the character of the land itself.

It may be true, that the land belongs to the general government, or to this state; but no such fact appears in the record of this case, and no such point is made by respondents in the record.

Possession of land has often been decided to be evidence of title in fee. Suñol *v.* Hepburn, 1 Cal., 254; Castro *v.* Gill, 5 Cal., 40; Potter *v.* Knowles, ib., 87; Norris *v.* Russel, ib., 249; Grover *v.* Hawley, ib., 485; Doe *v.* Herbert, Breese, 280; Doe *v.* West, 1 Blackf., 134; Hutchinson *v.* Perley, 4 Cal., 33; Hicks *v.* Dans, ib., 69.

If, then, an individual is found in possession of a piece of land, claiming it as his own, it is his property, to all intents and purposes, and may be treated as such. His rights therein can only be affected by a paramount title. It can make no difference, so far as the title to the land is concerned, for what purpose the possessor intends to use it, whether for agricultural, building, or mining purposes. The title to the mineral contained in the soil is another question.

By the English law, which we have in part adopted, mines of silver and gold within the realm are the exclusive property of the crown, and this right is entirely distinct from, and independent of, any right or ownership in the soil. The Supreme Court of this state, in Hicks *v.* Bell, 3 Cal., 219, have decided that a like right to and property in mines of the precious metals within this State, is vested in the State of California. Apart from this prerogative claim, the property in all minerals is *prima facie* in the owner of the fee. Collier on Mines, 14; C. Littleton, b. 4; 2 Black. Com., 18; 10 East., 273.

Taking this to be the law, then the party in possession of the claim is the owner of the land, and the same may be seized for his debts; but as he is not the owner of the gold contained in the claim, the gold cannot be sold for his debts. But the result is practically the same, for if the purchaser gets a title to and possession of the land, the party dispossessed would have no right to return upon land which no longer belonged to him, to take therefrom gold which never belonged to him.

But appellant contends that the State of California, by a long course of consistent legislation upon this subject, has abandoned her claim to the precious metals, which she might have had by virtue of her sovereignty; that she has not merely neglected to assert her claim, but that her legislation amounts to a complete abandonment or renunciation thereof.

Any government or sovereign power may renounce or abandon

McKeon *v.* Bisbee.

any claim of power or authority, when a further exercise of such authority or power shall be deemed inexpedient or detrimental to the interests of the people; and this may be by express terms, by implication, or by long non-user. In England, at one time, the crown laid claim to all minerals, and in recent times, attempts were made to comprise within the prerogative all mines of tin and copper, until, in the reign of William and Mary, all mines of tin, copper, iron, lead, etc., were secured to the subject by act of Parliament. Collier on Mines, p. 13, and authorities there cited. We need not cite particular instances of similar results, but point to the absolute power exercised by the Plantagenets and Stuarts, as compared with the very limited authority exercised by Victoria.

The Legislature of this State have, almost from the organization of the State government, passed laws upon the subject of mining and mining-claims. All these laws have treated mining-claims as the property of individuals, with a full knowledge that said claims are being worked, and the gold extracted therefrom, for individual use. The State has passed laws protecting the individual in the possession of his claim, and in the right to take gold therefrom; and has so far favored the miner, as to give him, in the mining region, rights to go upon the enclosure of another, to dig gold—a privilege which has been accorded to no other class of citizens.

We cite some of the laws which have been passed upon this subject:

April 19, 1850, an act for the better regulation of the mines and the government of foreign miners.

May 4, 1852, an act to provide for the protection of foreigners, and to define their liabilities and privileges.

In both these acts, the right of the American citizen to work the mines is conceded, and the right is granted to the foreigner on payment of license.

January 22, 1853, an act explanatory of the duties of sheriffs, or Statutes of 1853, page 19, provides for the sale of mining-claims for taxes.

May 15, 1854, an act to provide revenue for the support of the government of this state. By this act, mining-claims are expressly exempted from taxation.

April 7, 1857, an act to amend the act for the protection of foreigners.

April 29, 1857, an act to provide revenue for the support of the government of this state, expressly exempts mining-claims from taxation.

April 29, 1851, an act to regulate proceedings in civil cases in the Courts of Justice of this State. Section 571 of said act provides, that in actions to recover possession of a mining-claim, the pleadings shall be verified. Section 621, same act, provides,

that in actions respecting mining-claims, proof shall be admitted of customs, usage, etc.    These provisions of law still remain on the statute-book the same as when passed.

May 13, 1854, an act to amend the act last before-cited, provides, in sections 63 and 64, for the appointment of a receiver by the justice of the peace, in actions respecting mining-claims; and on the 28th April, 1855, the last-mentioned act was amended, as it stands at present upon the statute.    Articles 1374 and 1375, Wood's Digest, page 248.

Other statutes, bearing upon the subject, might be cited, but the above are deemed sufficient.

The Courts of this State have, in innumerable instances, adjudicated the conflicting claims of individuals to mining ground, and have, in all cases, treated such claims as individual property. The Supreme Court of this State have, it seems to me, sustained the views taken by us.

In McClintock *v.* Beyden, 5 Cal., 97, the Court says : " The government of this State being a government of the people, has, so far as its action has been determined, modified the claim to the precious metals," etc.    And again, " The act of April 13, 1850, passed for the better regulation of the mines, and the government of foreign miners, seems to give, by necessary implication, whatever right the State might have in the mineral in the soil, and the right to mine, to all native-born or naturalized citizens of the United States who may wish to toil in the gold placers."    Again, " The act of 1851, regulating proceedings in civil cases, (621,) would seem to extend to him (the miner) whatever right she (the State) might have to the mineral when found."

In Stiles *v.* Laird, 5 Cal., 120, the Court decides that miners have a species of property in mining grounds, etc.

In Fitzgerald *v.* Urton, 5 Cal., 308, the Court says, " That the Legislature of our State has seen proper to foster and protect the mining interest as paramount to all others."    In Irwin *v.* Phillips, 5 Cal., 140; Tartar *v.* Spring Creek Co., ib., 397; and in Stokes *v.* Barrett, ib., 36, the right of the miner in mineral land, is discussed and affirmed.

In Schnepler *v.* Evans, 4 Cal., 213, this Court decides, that in an action brought by one partner to recover possession of a mining claim, and to recover the sum of $2,027, his share of the gold taken out of the claim, the District Court has jurisdiction, and that legally the plaintiff had a right to the relief demanded. We cannot conceive how a plaintiff could be entitled to recover a sum of money, for gold taken out of a claim, unless the gold was the property of the plaintiff before as well as after it was taken out.    If a plaintiff in a suit at law can maintain a suit for the gold taken out of a claim of which he is in possession, then the gold in the claim must be his, and he is, to all intents and

purposes, the owner of the gold as well as of the land, by virtue of his possession.

In Sims v. Smith, January Term, 1857, the Court affirms the right of a party in possession of a mining-claim to recover damages for an injury to the same. In Freeman v. Powers, the Court decides that a mining-claim may have certain value, when it determines that justices of the peace have no jurisdiction in those cases where the claim is worth more than two hundred dollars.

In Merced Mining Co. v. Fremont et al., April Term, 1857, those questions are discussed at length, and the Court says, "If these views be correct, the owner of a mining-claim has, in practical effect, a good vested title to the property, and should be so treated, until his title is divested by the higher right of the superior proprietor."

Other decisions have been given, all of which recognize the rights of the miner to the undisturbed use and possession of his claim.

We then hold, that a mining-claim in the possession of an individual, and claimed by him, is his property, to all intents and purposes.

If, then, it is the property of an individual, it may be seized and sold upon execution against him for his debts.

Section 123 of the Practice Act, says, that the writ of attachment shall direct the sheriff to seize all the property of the dedefendant not exempt from execution, or enough to satisfy plaintiff's demand.

Section 217, Practice Act, says, "All goods, chattels, moneys, and other property, real and personal, of the judgment-debtor, not exempt by law, and all property and rights of property seized and held under attachment in the action, shall be liable to execution."

Section 219, Practice Act, defines what property is exempt from execution. Mining-claims are not exempted, and, therefore, if property of the judgment-debtor, are liable to be sold under execution.

If mining-claims cannot be sold under execution, then the miner may be the owner, and claim to be the owner, and be protected in his property in the same, as against all the world, (except only the right of the State, which may never be asserted,) and at the same time, to his creditor, deny his own title. This, we think, would be an absurdity.

*Sanderson & Newell* for Respondent.
No brief on file.

TERRY, C. J., delivered the opinion of the Court—BURNETT, J., concurrring.

10

This was an action to recover possession of a mining-claim, the plaintiff alleging title and prior possession. The defendant set up a title by purchase at a sale under execution. A demurrer to the answer, on the ground that the facts stated constituted no defence, was sustained by the Court below, and a judgment rendered in favor of plaintiff.

The question presented is, whether a mining-claim is liable to seizure and sale under execution.

By our statute, " all goods, chattels, money, and other property, real and personal, of the judgment-debtor, not exempt by law," is liable to execution.

Property is the exclusive right of possessing, enjoying, and disposing of a thing; it is " the right and interest which a man has in lands and chattels, to the exclusion of others;" and the term is sufficiently comprehensive to include every species of estate, real or personal. (17 Johns., 283 ; 14 East., 370.)

The Legislature have, by a series of enactments, recognized the right of the miner to take and occupy, for mining purposes, a portion of the public domain, and have provided a remedy by action against all who trespass on his possession.

" By this appropriation he acquires a vested interest in the exclusive occupation and enjoyment of the land, as against all the world, subject only to the right of the government by whose license and permission his possession was acquired; and his right to protect the property, for the time being, is as full and perfect as if he was the tenant of the superior proprietor for years, or for life." (Merced Mining Company *v.* Fremont, April Term, 1857.)

He has, in addition to the right of exclusive possession and enjoyment, the right of absolute disposition ; and may sell, transfer, or hypothecate, without let or hindrance from any one. Contracts for the sale of such interests have been frequently recognized and enforced by the Courts.

We think the interest of a miner in his mining-claim is property, and not having been exempted by law, may be taken in execution.

Judgment reversed, and cause remanded for further proceedings.