[Civ. No. 13675. Second Dist., Div. Three. Feb. 24, 1943.]

DOUGLAS AIRCRAFT COMPANY, INC. (a Corporation), Respondent, v. H. L. BYRAM, as County Tax Collector, etc., et al., Appellants.

J. H. O'Connor, County Counsel, and Gordon Boller, Deputy County Counsel, for Appellants.

H. W. Elliott and H. M. Dunham for Respondent.

BISHOP, J. pro tem.—The plaintiff seeks by this action to secure the refund of taxes paid by it on partially constructed airplanes and materials, on the ground that the unfinished planes and parts were tax exempt, because they belonged to the United States Government, and the fact that the plaintiff

had possession of the incomplete planes and materials, as it made use of them in fulfilling its contract with the federal government to build airplanes, did not give it a taxable interest in them. The defendants having failed to file answers to plaintiff's amended complaint within the time allowed them after their demurrers to that complaint were overruled, judgment was rendered that the plaintiff recover from the defendants "and each of them" the sum of $16,191.99. From a procedural standpoint, then, the problem presented is whether or not, as to each defendant, the amended complaint states any cause of action that might support the judgment, for the defendants have appealed from the judgment on the judgment roll alone. We have reached the conclusion that a cause of action was stated against the defendant county, but that no cause of action was stated against any of the other defendants, excepting only the defendant city of Santa Monica, and that as to that defendant no judgment for any particular sum of money was warranted.

We find it alleged, in the amended complaint, that prior to the first Monday in March, 1940, the plaintiff and the War Department of the United States Government had entered into contracts for the manufacture, sale and delivery by the plaintiff to the government of airplanes and spare parts therefor at a total price of $25,518,465.13. By a term of these contracts, partial payments were to be made as the work progressed, based on authenticated statements of expenditures. "In preparing such statements of expenditures the material delivered in the factory and work done upon such material for the performance of the contract may be taken into consideration." Then there is this provision of the contract:

"ARTICLE 37. TITLE TO PROPERTY WHERE PARTIAL PAYMENTS ARE MADE.—The title to all property upon which any partial payment is made prior to the completion of this contract, shall vest in the Government in its then condition forthwith upon the making of any such partial payment or payments."

In furtherance of its obligations under these contracts, the amended complaint continues, the plaintiff purchased materials and performed work upon them, then rendered statements and invoices showing in detail and by item the materials delivered. Before the first Monday of March, 1940, partial payments amounting to $5,720,352.30 had been made, and the materials delivered in the factory and in process of fabri-

cation, upon which the progress payments were in part based, were earmarked as property belonging to the United States Government. In the statement furnished the county assessor by the plaintiff, as required in 1940 by section 3629, Political Code, the plaintiff listed not only its own property but also that earmarked as belonging to the federal government, but the latter was specified as being the property of that government and not the property of the plaintiff. The county assessor, however, as of the first Monday of March, 1940, assessed to the plaintiff the property earmarked and reported to him as belonging to the federal government, including it under the following description: "The possessory interest and all other right, title and interest in and to the personal property located at 3000 Ocean Park Boulevard, Santa Monica, and described as follows: Raw Materials, Planes in Process and Finished Planes, $956,360.00." There was considerable property, admittedly owned by and properly assessable to the plaintiff, included under this assessment, but of the total, $285,251 was included as the value of the possessory (or other) interest of the plaintiff in the earmarked property. The plaintiff appealed, unsuccessfully, to the board of supervisors of the defendant county, sitting as a board of equalization, for an elimination of the assessment on the earmarked property, and then, in December, it paid, under protest, the sum of $16,191.99 required because of the assessment to it of an interest in the earmarked property. Within six months thereafter this action was commenced.

█ We have no doubt that the materials and parts upon which partial payments had been made became, pursuant to the contract provisions, the property of the federal government. It was so held in *Craig* v. *Ingalls Shipbuilding Corp.*, (1942) 192 Miss. 254 [5 So.2d 676], where contract provisions much like ours were construed, and we see no basis for giving the contracts any other construction. █ The suggestion that there was no passing of title because there was no change of possession as required by section 3440 of the Civil Code, does not stand analysis. The section, one of those in the Uniform Fraudulent Conveyance Act (Civ. Code, sec. 3439) provides in its pertinent part: "Every transfer of personal property . . . is conclusively presumed if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred to be fraudulent, and therefore void, against those who are his

creditors while he remains in possession. . . . '' As between a seller and those not creditors of the seller, a transfer without any change of possession is not rendered invalid. The county, so far as the complaint reveals, was not a creditor of the plaintiff at any time before noon of the first Monday of March, at which time it may be said to have become the plaintiff's creditor for taxes which then became a lien on any property belonging to the plaintiff. (Pol. Code, secs. 3716, 3717.) But it is arguing in a circle to say that the county became the creditor of the plaintiff with respect to the property in question, for the county became plaintiff's creditor, as to that property, only in the event that title had not passed to the federal government, but the theory on which it is argued that retention of possession prevented title from passing, is that the county became plaintiff's creditor. True, it appears that the plaintiff owned other property and so became obligated to pay taxes to the county, with the result that the county became its creditor. Were the county endeavoring to collect the taxes due it on this other property by levying on the property involved in this action, it might well be that it could insist that it was the plaintiff's creditor and that the transfer not accompanied by an immediate change of possession, was, as to it, fraudulent and void. (*Lindstrom* v. *Spicher*, (1925) 53 N.D. 195 [205 N.W. 231, 41 A.L.R. 968] ; *Richards-Conover Hardware Co.* v. *Sharp*, (1939) 150 Kan. 506 [95 P.2d 360].) But the county's relation to the property in question does not appear to be that of a creditor ; and it is only as a creditor that the county may question the validity of the transfer to the federal government.

 The county further contends that, if title did pass to the federal government, it was at most a bare, legal title, for security only, the beneficial title remaining in the plaintiff. This contention falls for lack of a tenable premise. The terms of the contract providing that title passes contain no suggestion that it is taken for security only. In one sense, of course, that was its purpose. When anyone buys an automobile or a bond he makes sure that he takes title to secure himself from possible loss due to action by the seller's creditors or by the seller himself. But to say that the federal government took title ''for security'' in this sense, is not to forward the county's case at all, and is not its contention. But it cannot be successfully argued that the federal government took the legal title to secure the obligation of the plaintiff to perform its contract, for here are the alternatives : (1) If the plaintiff fails to finish

a plane as agreed, the federal government trucks its property away; (2) if the plaintiff fully performs its contract by completing a plane, the federal government flies its property away. Title is not restored to the plaintiff when its performs its obligation. It is plain that title was not taken to secure the performance of any obligation.

If, as appears to be the fact, the plaintiff has no other legal interest in the property in question, there remains its possessory interest, and this, the county urges, is a taxable interest. Admittedly there is no statutory provision explicitly covering the situation, and no decision in point, but reliance is placed upon the decisions holding that a possessory interest in real estate is taxable, even though the property itself may be exempt. We are challenged to determine that a like interest in personal property is taxable, without awaiting legislative or judicial precedent, our attention being directed to the case of *State* v. *Moore,* (1859) 12 Cal. 56, fortified by *People* v. *Shearer,* (1866) 30 Cal. 645, where possessory interests in exempt real property were held (or said) to be taxable, although neither legislation nor earlier decisions then supplied a precedent.

The problem considered by the Supreme Court in the two cases just referred to and the problem before us have one vital element in common; in each the question is: is the "possessory" interest property? If so, it is taxable, by virtue of the constitutional mandate that "all property . . . shall be taxed" (Const. 1849, art. XI, sec. 13, present Const., art. XIII, sec. 1). The possessory interests involved in the two early cases, one to mining property, the other to agricultural land, were found to be "property." In the Moore case it was pointed out: "the right of the locator to sell, hypothecate, or in any manner dispose of his property in a mining claim, has been upheld, as well by legislative enactment as by judicial decisions." " . . . in *McKeon* v. *Bisbee,* 9 Cal. 137 [70 Am.Dec. 642], we held that the interest of the possessor of a mining claim was property under the law, and subject to be seized and sold under execution." "The Legislature recognized a proprietary interest in the possessor of mining claims by authorizing their hypothecation." In the Shearer case the court stated (p. 659) : "These possessions, as before stated, are recognized and protected as property by the Legislature in many instances, and by the Courts and the people always."

If plaintiff's right to have possession of the federal gov-

ernment's property could itself be said to be property, we would, of course, conclude that it was taxable, but it does not have the characteristics of "property." This is not because the objects to which the interest attaches are personal, rather than real, property, but because the interest is not "property," judged by any standard of which we have knowledge.

A usufructuary right, that is, "the right of using and enjoying the profits of a thing belonging to another, without impairing the substance" (*Heintzen* v. *Binninger*, (1889) 79 Cal. 5, 6 [21 P. 377]), is a property right, as illustrated by the cases holding a leasehold interest in land to be a taxable property right. (See *Hammond Lumber Co.* v. *County of Los Angeles*, (1930) 104 Cal.App. 235, 239, 240 [285 P. 896].)

Obviously that is not the nature of the right which the plaintiff had in the property involved in this action. A common characteristic of a property right, is that it may be disposed of, transferred to another. It seems plain to us that that characteristic is lacking in plaintiff's possessory interest. The Legislature has not authorized the hypothecation of such an interest, nor given it any recognition as "property." The use which the plaintiff was permitted to make of the partial planes and parts was entirely for the benefit of their owner, the federal government, and not for the benefit of the plaintiff. The fact that the plaintiff was to be paid for fabricating a plane out of the government's material does not change its use of the material from a use for the government to a use for the plaintiff. Plaintiff's compensation becomes due because it makes use of the materials and partially completed planes, not for itself, but for the government.

Whatever argument, in support of our view, could be made out of the fact that section 107 of the Revenue and Taxation Code, adopted in 1939, contains a definition of "possessory interests," and limits them to land and to taxable improvements on tax exempt land, is unavailable to us because the code by its own terms (section 27) did not become effective until February 1, 1941, practically a year after the assessment which gave rise to this case. This explains our reference throughout the opinion to sections of the Political Code, except where the procedural question of parties defendant was involved.

Our conclusion that the plaintiff had no possessory interest arising to the dignity of taxable property, calls for the affirm-

ance of the judgment which permitted the plaintiff to recover from Los Angeles County the tax paid. On no theory, however, was the plaintiff entitled to a judgment against any of the other defendants for the recovery of the tax illegally exacted. This is admitted by the respondent and does not merit discussion. The inclusion of the city of Santa Monica as a party defendant was authorized by section 5138 of the Revenue and Taxation Code, as a part of the tax collected by the county had been levied by the city, but a judgment against the city for the whole sum collected was not thereby warranted.

The judgment is accordingly affirmed, insofar as it affects the defendant county of Los Angeles; it is reversed as it affects the remaining defendants.

Desmond, P. J., and Shinn, J., concurred.