[Civ. Nos. 21829-21832. Second Dist., Div. One. Apr. 2, 1957.]

C. C. MOORE AND COMPANY, ENGINEERS (a Corporation), Appellant, v. JOHN R. QUINN, as County Tax Assessor, etc., et al., Respondents.

[Four Cases.]

James E. Neville, James Neville, Russel Shearer, Shearer, Thomas & Lanctot and Robert H. Heeb for Appellant.

Harold W. Kennedy, County Counsel (Los Angeles), Gordon Boller, Assistant County Counsel, Alfred Charles DeFlon, Deputy County Counsel, Roger Arnebergh, City Attorney (Los Angeles), and Spencer L. Halverson, Deputy City Attorney, for Respondents.

DORAN, J.—The present appeal involving four actions consolidated for trial and appeal, questions the assessment and taxation of certain component parts of steam boiler plants, manufactured by third parties according to minute and detailed specifications prescribed by the municipalities in written contracts with appellant engineers, and delivered directly to the job sites by the manufacturers on or before the first Mondays in March of the years, 1953 and 1954.

As stated in appellants' brief, "Those parts which had been affixed or attached permanently to the boiler structures were not assessed, the assessor presuming title had vested in the municipalities. The assessments on the tools, equipment, and consumable supplies provided by the plaintiff for the purpose of the jobs were voluntarily paid by the plaintiff and are not the subject of this action."

The appellant duly protested any assessment of the unattached boiler parts, and upon denial thereof, paid the taxes under protest and instituted the present actions against the county tax assessor of the county of Los Angeles and the cities of Burbank, Glendale and Los Angeles, to recover back the taxes so paid. The judgment of the trial court sustained the assessments whereupon the plaintiff contractor instituted the present appeal.

The contracts and specifications involved herein were prepared by the cities and submitted to those wishing to bid on the jobs. And, as appellant avers, "The plaintiff's position required that he accept the contracts as drawn and meet the detailed specifications of the cities or not submit the bid. . . . The property involved on each of the jobs was essentially the same. . . . The plaintiff was in no way concerned with the manufacture of these component parts but it was obligated to assemble them into the completed steam generating units after their arrival at the job sites. Basically comparable to a toy erector set, this assembly process required that the plaintiff do little more than weld or bolt the prefabricated parts into place. . . . Each component part was specifically manufactured for the unit in which it was to be incorporated and thus was incapable of use elsewhere without uneconomical expenditures for alteration."

The job sites were owned, selected and controlled by the respective cities; fences and guards were maintained by the cities, and after delivery of the parts to the job sites, the plaintiff contractor was unable to remove such parts without a permit. The cities' control over the taxed, component parts

so delivered, extended through the assembly periods, "during which," as appellant states, "their possession of said property is subject only to the plaintiff's right and obligation under the contracts to assemble the component parts for the benefit of the cities upon foundations constructed by the latter."

According to the stipulated facts, plaintiff, in performance of its contract, purchased from various manufacturers and suppliers the component parts which were shipped directly to the job sites. The bills of lading, shipping orders or manifests therefor recited that such parts were "consigned to the City of Burbank Power Plant, 164 West Magnolia Boulevard, Attn: C. C. Moore & Co., Engrs., Burbank, California." Invoices or bills for such shipments were sent to the plaintiff contractor.

As stipulated, "all payments which were made to said sellers and suppliers for said component parts and materials were made by said plaintiff and no such payment or payments were required to be made by the City of Burbank. That upon arrival of said property at the job site plaintiff invoiced said City therefor, and thereupon said City made progress payments to plaintiff of 50% of the value of the property so invoiced, in accordance with the terms of the contract" between plaintiff and the city.

It was further stipulated that the progress payments so made by the city to plaintiff, and received, were "deposited in its (plaintiff's) bank account; what in its property statement made to the defendant Assessor for tax purposes plaintiff reported its solvent credits and included therein the amount of its balance in said bank account as of the first Monday in March and was assessed and taxed in the County of Los Angeles on the basis of such statement."

In respect to this matter it is contended that "Thus, the plaintiff is not only a victim of an illegal assessment but has also suffered because of the unconstitutional imposition of double taxation. It was taxed once upon these partial payments received and deposited in its bank account and again on the full value of the component parts thus partially paid for and delivered to the job sites." The tax so assessed and paid under protest on this unattached property at the Burbank job was $5,124.34; at the Glendale job site, $1,786.31; at the Los Angeles site in 1953, $37,373.10, and in 1954, $522.69.

In sustaining the validity of the assessment, the trial court found that the contract was one "for plaintiff to furnish

and erect for said City, complete and ready for operation at the City's steam plant site in Burbank, California, a boiler unit for a total lump sum price of $812,572.00, and was not a sale or a contract for the sale or delivery of component parts thereof or materials therefor."

The formal contracts set forth the detailed specifications in respect to the different jobs which, as hereinbefore indicated, were similar in nature. These contracts contain no provisions relating to payment of taxes and, with the exception of the Burbank contract, do not directly deal with passing of title.

Section 10 of the Burbank contract, however, reads as follows: "All work done and materials delivered on the premises to form part of the works *are considered property of the City* and are not to be removed without the Department's consent, but the Contractor shall have the right to remove all surplus materials from the site as the work progresses." (Italics added.)

The Glendale and Los Angeles contracts, similar in nature but differing somewhat as to terms of payment, do not contain provisions such as that quoted from the Burbank contract. However, section 32 of the Glendale contract does provide that "all shipments shall be consigned and properly directed to the Public Service Department, City of Glendale, California," to which "Invoices shall be rendered in triplicate." All of the contracts contemplate that the appellant shall install complete, assembled steam plants for an agreed total price.

Various other provisions have been singled out and presented by the contending parties as proving or disproving the contentions made. ■ However, as in all contracts and other legal instruments, such detached provisions standing alone are not determinative except when viewed in relation to the instrument as an entirety, or where such provisions precisely answer the query. ■ When viewed in the light of the contracts considered as a whole and the surrounding circumstances, the appellant's arguments find support therein.

In dealing with appellant's contention that it should not have been taxed in respect to unattached, component parts of the steam plants in question, the basic provisions of Revenue and Taxation Code, section 405, should be noted. "Annually, the assessor shall assess all the taxable property in his county, except State assessed property, to the person owning, claiming, possessing or controlling it at 12 o'clock meridian of the

first Monday in March." On that date the boiler parts in question had been delivered but were not assembled.

Research by both parties to this appeal has failed to disclose any case involving an identical factual situation. There is, however, a strong analogy between the present case and *Douglas Aircraft Co.* v. *Byram* (1943), 57 Cal.App.2d 311 [134 P.2d 15], and other cited cases. In the Douglas opinion it was held that title to materials and parts upon which progress payments were made under a contract for the construction of airplanes and spare parts by a corporation for the United States government, vested in the federal government, and that the property was exempt from county taxation.

As pointed out by the respondent, in the Douglas case, the contract with the government contained the provision that "The title to all property upon which any partial payment is made prior to the completion of this contract, shall vest in the Government in its then condition forthwith upon the making of any such partial payment or payments." As will be seen by comparison, such language is not fundamentally divergent from the terminology employed in the Burbank contract which states that "All work done and materials delivered on the premises to form part of the works *are considered property of the City* . . . ." (Italics added.) It is difficult to imagine language more positive.

Although the other contracts here involved do not contain similar language, it seems not unreasonable to infer from the general context and circumstances that if technical legal title had not passed to the cities, beneficial possession and complete control had so passed. No interest remained in the contractor other than the contractual obligation to assemble the parts.

The passing of technical legal title to the unassembled parts is not necessarily involved in the present problem, for under section 405 of the Revenue and Taxation Code, the assessor is empowered to assess property "to the person owning, claiming, possessing or controlling it" on the first Monday in March. When it is considered that the appellant had no right to remove the parts, much less to transfer title thereto, and that the cities reserved absolute control prior to assembly of the parts, it can only be concluded that the true, beneficial interest was in the respective cities rather than in the appellant contractor whose only duty was to assemble the parts.

The Douglas Aircraft opinion, just cited, contains an inter-

esting discussion of such beneficial, possessory interests, making that case applicable not only to the Burbank contract but likewise to the Glendale and Los Angeles contracts under which appellant was operating. The airplane parts, like the boiler parts here involved, were but portions of a component whole in which the beneficial interest or "usufructuary right" as phrased in the Douglas case, was in the government rather than the contractor. It is this interest, rather than any technical legal concept of title, which should furnish the determinatory factor.

The entire reasonableness of this conclusion becomes the more apparent when it is considered that these component boiler parts were specially manufactured for the individual jobs according to the cities' demands, making such parts practically useless for any other job or purpose. Whether at the moment of the assessment date these parts were actually attached and assembled or were then on the job site awaiting such action would seem to be of little or no importance since in either event the cities were in complete control and possession. The relation of the component parts to the boiler plant was not dissimilar to that of a key manufactured to fit a particular lock. Whether such a key be actually in the lock or elsewhere at a given moment cannot alter the interrelation of the two or change the basic nature of the situation.

Both parties to this appeal aver that evidence of the surrounding circumstances should be considered in determining the intentions of the parties. This is undoubtedly true. It is evident that all of the contracts contemplate that the appellant contractor should, for a specified over-all sum, assemble complete steam plants, the component parts of which had been manufactured by other parties and delivered to the city controlled job sites, there to be attached to the cities' real estate.

No circumstance has been pointed out and there is no reasonable contractual interpretation indicating, either directly or indirectly, that it was ever contemplated that the total sum to be paid appellant would later be drastically reduced by taxes assessed against unassembled parts in contrast to those similar parts already attached. This reduction of appellant's remuneration will amount to some $44,000.

Had such been the intention, it would have been an easy matter to have inserted some definite provision to that effect. It is now too late to attempt to engraft, by implication or judicial theorizing, such an additional burden on one of the contracting parties. Nor can it be supposed that since a

municipality is one of the parties, some principle of interpretation may be invoked in its favor differing from that applicable to individuals.

 Relative to contracts drafted by insurance companies, and in analogous situations, it is a long established rule that such agreements will be construed against the party who prepared the instrument and in favor of the other contracting party. In the present case, the appellant contractor had nothing to say in respect to the form of the contract or the terminology there employed.

 It should be borne in mind that law as well as equity is possessed of a conscience. Municipalities, whether acting as contracting parties, exercising the taxing power, or otherwise engaged, are subject to the established principles of ethics and fair dealing. A municipal corporation can only display its conscience vicariously, through the activities of its officers and departments. And such officers, whoever they may be, are but the designated representatives of the individuals who compose the government. The appellant, a member of the public as well as a contracting party, is entitled to fair consideration at the hands of the public's representatives. Under the record as here presented and the judgment as herein rendered, it is deemed that the appellant has received something less than this consideration.

As already noted herein, when the boiler parts were delivered by the manufacturers to the city job sites, such parts were invoiced to the respective cities which thereupon made partial payments of 50 per cent or more to the appellant who, in turn, remitted to the manufacturers. As soon as received these payments were deposited in the appellant's bank account, whereupon such bank balance was increased to that extent.

"This account," as said in appellant's brief, representing in effect the applicable portions of the purchase price received on the taxed component parts, was reported by plaintiff as solvent credits in its property statement as required by law. As a result plaintiff was assessed and taxed on the basis of such statement. Therefore, says appellant, "It was taxed once upon these partial payments received and deposited in its bank account and again on the full value of the component parts thus partially paid for and delivered to the job sites." In view of the decision already indicated herein, it becomes unnecessary to determine whether this procedure constitutes, as appellant argues, a double taxation. However, the situa-

tion does constitute a part of the surrounding circumstances.

The judgment of the trial court is reversed and judgment ordered requiring the respective respondents to refund to appellant the amount of taxes paid under protest, in accordance with the views hereinbefore expressed.

White, P. J., and Fourt, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied May 29, 1957. Traynor, J., was of the opinion that the petition should be granted.