465 P.2d 625

**RUSSET POTATO CO., Plaintiff-Appellant,**

v.

**The BOARD OF EQUALIZATION OF BING-HAM COUNTY, State of Idaho, Defendant-Respondent.**

No. 10467.

Supreme Court of Idaho.

Feb. 24, 1970.

Furchner & Anderson, Blackfoot, for appellant.

Robert M. Robson, Atty. Gen., Thomas C. Frost, Asst. Atty. Gen., Boise, and Thomas E. Moss, Pros. Atty., Blackfoot, for respondent.

McFADDEN, Chief Justice.

During 1966, the plaintiff-appellant, Russet Potato Company, and a representative of the Bureau of Indian Affairs reached an agreement for the lease of 12.04 acres of land which the United States owned and held in trust for certain Indian allottees, members of the Fort Hall Indian Tribe. Because of certain facts not pertinent here, there was no formally executed agreement until November 1967. Notwithstanding the delay in obtaining the agreement, appellant began the construction of a large modern potato storage warehouse on the premises, which structure was completed in September 1966.

On May 26, 1967 the Bingham County Assessor assessed the building as personal property assigning an assessed value of the improvement at $9,298.00. Appellant

petitioned the Bingham County Board of Equalization for a cancellation of the assessment asserting that the building was a part of the realty owned by the United States Government and was exempt under the provisions of I.C. § 63–105A. Appellant also claimed that as the building had become the property of the United States, the building was erroneously taxed in the name of the appellant. The county board of equalization denied appellant's petition and appellant then appealed to the State Tax Commission.

Prior to hearing before the State Tax Commission, the lease agreement was formally executed by appellant and the representative of the government. This agreement was in conformity with the prior agreement. The State Tax Commission affirmed the county board of equalization ruling, and the cause was appealed to the district court, which in turn affirmed the holding of the State Tax Commission. This appeal resulted.

The stated purpose of the lease is: "Potato storage building and appurtenant facilities and other agricultural storage facilities including parking area." The lease was for twenty-five years, with an option by appellant to renew for an additional twenty-five years. The consideration to be paid by appellant as lessee is $286.00 per year, and the lease provides for an adjustment of the rental at periodic intervals, stating "Such review shall give consideration to the economic conditions at the time, exclusive of improvement or development accomplished by the lessee or the contribution value of such improvements." Appellant is obligated to maintain the premises and buildings in a safe, sanitary and aesthetic condition. Modifications of any improvements may be made, and appellant may sublease or assign all or any part of the land or improvements placed on the premises with the consent of the Superintendent of the Fort Hall Agency. Appellant has the right to mortgage its interest in the property, which it has done. Appellant also

carries the insurance on the building constructed on the premises.

Section 16 of the lease states:

"The Lessee hereby agrees that at the termination of this lease by normal expiration or otherwise, the Lessee will peaceably and without legal process deliver up the possession of the premises. herein described, including buildings and other improvements which the Lessee agrees upon construction and making become a part of the premises and the property of the Lessor * * *."

The potato storage building involved here is a new, modern, above-ground facility, attached to the real estate by a concrete base. The building is constructed of laminated timber-ribs and steel frame. It is insulated by fiberglass with complete humidity and temperature control, automatically maintained. The useful life of the building is at least fifty years, and perhaps as much as seventy-five years.

No question is presented as to the method of computation or amount of valuation.

The trial court found that under the leasing agreement "appellant has the right to the full and beneficial use of the building so constructed by it, including the right to sub-lease or encumber the same, for a period of fifty years from July, 1966." The court concluded

"That appellant is to be regarded as having the real ownership of the building in question for purposes of the ad valorem tax laws of the State of Idaho, and obliged to pay any just ad valorem taxes on the value thereof."

The appellant contends that it is merely a lessee of the building, the title to which, pursuant to the lease agreement, vested in the United States immediately upon construction. Appellant argues that, as lessee, it has only a leasehold or possessory interest in the property and that such interests in public lands are not subject.

to taxation, citing I.C. § 63–105G.[1] Appellant also argues that under the provisions of I.C. § 63–105A[2] and Idaho Const. Art. 7, § 4[3] the building being owned by the federal government is not subject to taxation.

Reference is also made by appellant to the provisions of Idaho Const. Art. 21, § 19, which in pertinent part provides:

" * * * And the people of the state of Idaho do agree and declare that we forever disclaim all right and title to the unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indians or Indian tribes; and until the title thereto shall have been extinguished by the United States, the same shall be subject to the disposition of the United States, and said Indian lands shall remain under the absolute jurisdiction and control of the congress of the United States. * * * That no taxes shall be imposed by the state on the lands or property therein belonging to, or which may hereafter be purchased by, the United States, or reserved for its use."

Appellant's assignments of error are premised on the foregoing statutory and constitutional provisions. Appellant argues that the title to the building in question passed to the federal government under the provision of the lease that upon construction the improvement became the property of the lessor and by virtue of the fact that the building was permanently affixed to the realty.

On the other hand the respondent asserts that regardless of "whether one chooses to characterize appellant's possessory interest in the building as a leasehold, or an interest so strong, significant, and beneficial that it constitutes the real ownership of the facility, it is by either measurement a valid property right. As such, it is covered by Section 63–101,[4] Idaho Code." Respondent relies on the case of Offutt Housing Co. v. County of Sarpy, 160 Neb. 320, 70 N.W.2d 382 (1955), aff'd 351 U.S. 253, 76 S.Ct. 814, 100 L.Ed. 1151 (1956), and points to the provisions of I.C. § 63–1223[5] as the legislative authority for the tax assessor to assess the property as personal property.

Respondent in citing Offutt Housing Co. v. County of Sarpy, supra, asserts that it is relying upon the state court opinion for the proposition that the state may tax a possessory interest amounting to an ownership, notwithstanding that the legal title may be held by the United States government. It should be pointed out, however, that in the Offutt Housing Co. decisions, supra, according to the majority opinion of the United States Supreme Court, Congress had authorized taxation of the possessory interest of the lessee.

The Offutt Housing Co. v. County of Sarpy opinions involved the ownership of land by the federal government, with a lease of the ground to a private corporation, which constructed upon the premises a housing project to be rented by the private corporation to both servicemen and employees. The project was

1. I.C. § 63–105G. "The following property is exempt from taxation: Possessory rights to public lands."

2. I.C. § 63–105A. "The following property is exempt from taxation: Property belonging to the United States, except when taxation thereof is authorized by the Congress of the United States * *."

3. Idaho Const. Art. 7, § 4. "The property of the United States, except when taxation thereof is authorized by the United States * * * shall be exempt from taxation."

4. I.C. § 63–101. "All property within the jurisdiction of this state, not expressly exempted, is subject to assessment and taxation."

5. I.C. § 63–1223. "All improvements on government or state land and all improvements on railroad rights of way owned separately from the ownership of rights of way upon which the same stands shall be assessed as personal property and entered upon the personal property assessment roll."

financed by a mortgage of the premises to a lending corporation, with the loan guaranteed by a federal agency. In the opinion the United States Supreme Court first determined that Congress had authorized taxation of the private company's interest in the property and, after making that determination, considered the objection of the company to measurement of the state tax by the full value of the buildings and improvements. The court determined that since the company's leasehold interest was for seventy-five years and the normal life of the improvements was fifty years, the lessee's interest encompassed the full value of the buildings and improvements.

Respondent, in relying upon language in the Offutt opinions to the effect that bare legal title in the federal government should not be employed to defeat the levy of the tax on the improvements, discounts the import of the holding that the taxes were being levied on the leasehold interest of the company in the improvements and that such interest was being taxed at the full cash value of the improvements.

The facts in the Offutt case differ materially from those of the instant action. First, there was an act of Congress authorizing taxation (here no such congressional act is cited); second, the life of the improvements was less than the life of the lease (here the lease is for 25 years, with an option to renew for an additional 25 years, and the life of the improvement is from 50 to 75 years); third, the Nebraska statute referred to, 77–1209, R.R.S.1943, provided that "All improvements put on leased public lands shall be assessed to the owner of such improvements as personal property, together with the value of the lease * *."

One great difference between the facts in the Offutt Housing Co. case and the instant case is that in the Offutt Housing Co. case Congress authorized taxation by the state. The Supreme Court of the United States in its opinion, stated:

"Charged as we are with this function,. we have concluded that the more persuasive construction of the statute, however flickering and feeble the light afforded for extracting its meaning, is. that the States were to be permitted to tax private interests, like those of this petitioner, in housing projects located on areas subject to the federal power of 'exclusive Legislation.' We do not hold that Congress has relinquished this power over these areas. We hold only that Congress, in the exercise of this power, has permitted such state taxation as is involved in the present case." 351 U.S. at 260–261, 76 S.Ct. at 819.

It is our conclusion that the Offutt Housing Co. case cannot be construed as. authority for the proposition that the appellant was in fact and as a matter of law the owner of the improvements. On the contrary, the case holds only that Congress had consented to state taxation of the leasehold interest, which for tax purposes was valued at the value of the improvements.

There are also three other United States. Supreme Court cases which are similar to Offutt Housing Co. v. County of Sarpy, supra. See United States v. City of Detroit, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958); United States v. Township of Muskegon, 355 U.S. 484, 78 S.Ct. 483, 2 L.Ed.2d 436 (1958); City of Detroit v. The Murray Corp. of America, 355 U.S. 489, 78 S.Ct. 458, 2 L.Ed.2d 441 (1958). Like Offutt Housing Co. v. County of Sarpy, supra, however, none of these cases is authority for taxing the lessee of federal property as the owner of the property. In each of these cases the taxpayer held a possessory interest in property, the technical title to which was in the federal government. The state levied a tax upon the possessory interest, which action was upheld by the United States Supreme Court.

The key distinction between all of these cases and the case at bar is that, unlike

Nebraska and Michigan, at the time the present action arose, Idaho had no statute permitting the taxation of leaseholds or possessory interests. The Michigan statute, on the other had, provided that

"When any real property which for any reason is exempt from taxation is leased, loaned or otherwise made available to and used by a private individual, association or corporation in connection with a business conducted for profit * * * the lessees or users thereof shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property." Michigan Compiled Laws § 211.181.

The 1969 Idaho legislature, however, amended I.C. § 63–1223 to read as follows:

"All improvements on government, Indian or state land * * * in which nonexempt persons have possessory interests shall be assessed as personal property and entered upon the personal property assessment roll." (1969 S.L. Ch. 455 § 44, p. 1241)

If the present case had arisen after the amendment of this statute, there would be no doubt that the situation would then be parallel to the situation in the above cited United States Supreme Court decisions. It has been held, however, that in the absence of a statute authorizing the taxation of leasehold or possessory interests, such interests are not taxable. Maricopa County v. Fox Riverside Theatre Corp., 60 Ariz. 260, 135 P.2d 513 (1943). See also Douglas Aircraft Co., Inc., v. Byram, 57 Cal.App.2d 311, 134 P.2d 15 (1943); City of Oakland v. Albers Bros. Milling Co., 43 Cal.App. 191, 184 P. 868 (1919). There is, then, no authority for taxing the appellant as the owner of the building involved here, and there was no Idaho statute providing for the taxation of appellant's leasehold interest in the building.

■ Throughout the statutes dealing with the taxation of real and personal property in Idaho runs the concept that the owner of the record title is the person to be considered as the taxpayer. See I.C. §

63–204, which provides "All property required to be listed and assessed under the provisions of this act shall be listed by the *owner or his agent*, except as hereinafter provided * * *." (Emphasis added); I.C. § 63–301, which provides "* * * It is hereby made the duty of the assessor to ascertain from the office of the county recorder all changes *in the ownership of land* in his county * * *." (Emphasis added.) See also Chapter 12 of Title 63, Idaho Code pertaining to the assessment of personal property.

■ In the present case the title to the building is in the United States Government. It is well settled that when title to leased property is in the government, which is exempt from taxation, the lessee cannot be taxed on the property. See People ex rel. International Nav. Co. v. Barker, 153 N.Y. 98, 47 N.E. 46 (1897); City of Oakland v. Albers Bros. Milling Co., 43 Cal. App. 191, 184 P. 868 (1919); Douglas Aircraft Co. v. Byram, 57 Cal.App.2d 311, 134 P.2d 15 (1943). The lessee might, however, be taxed on its leasehold interest, as distinct from title to the building, where the legislature has provided for taxation of possessory interests. 2 Cooley, The Law of Taxation § 593, p. 1267 (4th ed. 1924). Where, however, the legislature has not provided for the taxation of leasehold or possessory interests, no tax can be levied on them. Maricopa County v. Fox Riverside Theatre Corp., 60 Ariz. 260, 135 P.2d 513 (1941); Douglas Aircraft Co. v. Byram, supra.

I.C. § 63–108 defines real property for the purposes of taxation as follows:

"Real property for the purposes of taxation shall be construed to include land * * * and all buildings, structures and improvements, or other fixtures of whatsoever kind on land, * * * and all other property which the law defines, or the courts may interpret, declare and hold to be real property under the letter, spirit, intent and meaning of the law, for the purposes of taxation * * *."

I.C. § 63–109 defines personal property as:

"Personal property for the purposes of taxation shall be construed to embrace and include, without especially defining and enumerating it, all goods, chattels, stocks and bonds, equities in state lands, easements, reservations, and all other matters and things of whatsoever kind, name, nature or description, which the law may define or the courts interpret, declare and hold to be personal property under the letter, spirit, intent and meaning of the law, for the purposes of taxation, and as being subject to the laws and under the jurisdiction of the courts of this state."

I.C. § 63–1223 provides

"All improvements on government or state land and all improvements on all railroad rights of way owned separately from the ownership of the rights of way upon which the same stands shall be assessed as personal property and entered upon the personal property assessment roll."[6]

At the time of enactment of these statutory provisions, the legislature was aware of the fact that normally improvements on real estate become a part of the realty, but in the case of improvements on government or state lands, an exception to this general law was made because of the fact that the real estate on which improvements were situate could not be assessed or taxed, by reason of the government or state ownership. Idaho Const. Art. 7 § 4. The exception was that when improvements were made on state or government lands they were to be considered as personal property. It necessarily follows that if such improvements were the property of either the state or federal government the constitutional provision barred assessment of the improvements for taxation, but if the improvements remained the property of the user of the state or government lands, such improvements were subject to assessment and taxation as personal property.

It is recognized that in the instant case the appellant under the terms of the lease has practically all of the rights in and to the warehouse normally considered as incident to ownership of the property—use of the property, right to encumber it, the right to transfer it (subject to approval), the right to improve, alter and change it; yet the title, under the terms of the lease was transferred upon construction of the building to the federal government. The appellant, therefore, could not be taxed as the owner of the building. People ex rel. International Nav. Co. v. Barker, supra; City of Oakland v. Albers Bros. Milling Co., 43 Cal.App. 191, 184 P. 868 (1919); Douglas Aircraft Co. v. Byram, 57 Cal.App.2d 311, 134 P.2d 15 (1943). And since the laws of Idaho make no provision for the assessment and taxation of the possessory rights of the lessee, or for the assessment and taxation of the leasehold, the assessment in this case was illegal. Maricopa County v. Fox Riverside Theatre Corp., 60 Ariz. 260, 135 P.2d 513 (1943); Douglas Aircraft Co. v. Byram, supra.

The judgment of the trial court is reversed. Costs to appellant.

DONALDSON, J., and HAGAN, D. J., concur.

McQUADE, Justice (dissenting).

The majority, today, reaches an erroneous result by a route which is not tenable as a matter of law. They, for instance, contend that, following Offutt Housing Co. v. Sarpy County, 351 U.S. 253, 76 S.Ct. 814, 100 L.Ed. 1151 (1956), congressional approval is necessary before a state may

6. This section of the statute as initially enacted in 1913 (S.L.1913, ch. 58 § 159, p. 226), was as follows:

    "Sec. 159. All improvements on Government or State lands, and all improvements on railroad right-of-way owned separately from the ownership of the right-of-way upon which the same stand, shall be assessed as personal property and entered upon the personal property assessment roll."

tax private property located on an Indian reservation. The *Offutt Housing Company* case turned, in part, on the interpretation of a federal statute in order to find a congressional purpose to allow state taxation of privately owned leasehold improvements and fixtures on a federal military installation. That determination was necessary *in that case,* because under art. 1, § 8, cl. 17, of the United States Constitution, the power of Congress "to exercise exclusive legislation" over the District of Columbia and military lands has been held to prohibit a state tax on private property *located on a military base* unless it has been explicitly authorized by Congress. That issue is not present in this case. We are not confronted with an attempt to levy a tax on personal property on military lands. There is no such special impediment to Idaho's taxing appellant's interest in the use or possession of the fixtures built on the United States exempt property other than the majority's grudging interpretation of our own statutes. *See also* Thomas v. Gay, 169 U. S. 264, 18 S.Ct. 340, 42 L.Ed. 740 (1897); 2 Cooley, Taxation, § 648, at 1361–1362 (4th ed. 1924).

The majority also reasons that, because *one* of the statutes involved in the three Michigan cases, United States v. Detroit, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958); United States v. Muskegon, 355 U.S. 484, 78 S.Ct. 483, 2 L.Ed.2d 436 (1958); City of Detroit v. Murray Corp., 355 U.S. 489, 78 S.Ct. 458, 2 L.Ed.2d 441 (1958), was extremely detailed, our statute, *if it is to reach the appellant's property,* must be as prolix. This utterly misconstrues the import of these cases. The third of the three, City of Detroit v. Murray Corp., *supra,* did not involve the Michigan statute set out in the majority opinion. The statute involved in the *Murray* case authorized taxation of persons possessing personal property. The Supreme Court of the United States, *per* Justice Black, explicitly renounced a hair-splitting close interpretation approach to these statutes:

"However in passing on the constitutionality of a state tax 'we are concerned only with its practical operation, not its definition or the precise form of descriptive words which may be applied to it.' Lawrence v. State Tax Commission, 286 U.S. 276, 280, 52 S.Ct. 556, 557, 76 L.Ed. 1102. Consequently in determining whether these taxes violate the Government's constitutional immunity we must look through form and behind labels to substance. This is at least as true to uphold a state tax as to strike one down. Cf. Wisconsin v. J. C. Penney Co., 311 U.S. 435, 443–445, 61 S.Ct. 246, 249–250, 85 L.Ed. 267; Capitol Greyhound Lines v. Brice, 339 U.S. 542, 70 S.Ct. 806, 94 L.Ed. 1053. Due regard for the State's power to tax requires no less." City of Detroit, *supra,* 492–493, 78 S.Ct. at 460.

The United States Supreme Court, in the three Michigan cases, was only interested in the power of a state to levy a tax such as the one which is the subject of this action. It was not concerned with an examination of whether the state statutes empowered the tax collector to levy a tax on each item of property by name and quantum of title.

"It is true that the particular Michigan taxing statutes involved here do not expressly state that the person in possession is taxed 'for the privilege of using or possessing' personal property, but to strike down a tax on the possessor because of such verbal omission would only prove a victory for empty formalisms. And empty formalisms are too shadowy a basis for invalidating state tax laws." City of Detroit, *supra,* 493, 78 S.Ct. at 461.

The holdings in United States v. Detroit, *supra,* United States v. Muskegon, *supra,* and City of Detroit v. Murray Corp., *supra,* were simply that a state has the power to tax private interests in possession and use of government property if the state desires.

The critical question, then, is whether the building in the present case is privately "owned" by the appellant, and, therefore, taxable under I.C. § 63–1223 as it read when this tax was levied; or whether it is "own-

**508**

ed" by the federal government and exempt from taxation under I.C. § 63–105A.

The majority reasons that "title" to the building is in the United States Government and that the appellant cannot be charged with any ownership interest in it. It is my opinion that the appellant's fifty-year leasehold interest is so substantial as to be properly characterized as one of "ownership" for the purposes of our tax statute. The case of Offutt Housing Co. v. Sarpy County, *supra*, is most instructive on this point. The facts of that case were quite similar to those in the case before us. The Offutt Housing Co. leased land from the federal government for the purpose of constructing a housing project upon it. The seventy-five year lease provided that title to the buildings vested in the government upon construction, but the housing company was obligated to reimburse the government for fire and police protection and had the right to permit utility companies to extend lines to the project to provide services. The company also carried the insurance on the buildings. The Sarpy County tax assessor assessed a personal property tax against the company, which the company challenged, contending that the government was the owner of the structures. The United States Supreme Court rejected this argument and held that the housing company was taxable on the full value of the buildings. The Court pointed out that

> "Labeling the Government as the 'owner' does not foreclose us from ascertaining the nature of the real interests created and so does not solve the problem. See Millinery Center Building Corp. v. Commissioner, 350 U.S. 456, 76 S.Ct. 493 [100 L.Ed. 545]. * * * The Government may have 'title,' but only a paper title, and, while it retained the controls de-

scribed in the lease as a regulatory mechanism to prevent the ordinary operation of unbridled economic forces, this does not mean that the value of the buildings and improvements should thereby be partially allocated to it." 351 U.S. 253, 261, 76 S.Ct. at 819 (1956).

The appellant has the right to full beneficial use of this building for fifty years, including the right to encumber it, the right to sub-lease it, the right to modify its structure, and the obligation to maintain it. The appellant also carries fire and casualty insurance on the building. The Russet Potato Co. is in every sense, except as holder of the bare, legal title, the "owner" of the building. Yet the majority, admitting that "the appellant under the terms of the lease has practically all of the rights * * * normally considered as incident to ownership of the property," decides this case on the basis of the mere transfer of legal title, without normal incidents of ownership. Neither the word nor the legal concept of "title" is mentioned in any of the pertinent statutes. The concept which is important in the interpretation of I.C. § 63–1223 is ownership. By imposing the narrow, technical definition of "title" on the statutory word "owned," the majority is defeating the purpose and spirit of the tax law. I conclude that the fifty years of dominion and control over the property by appellant is ownership as contemplated by the statute. The life of the building is approximately fifty years. Therefore the reversionary interest of "title" applies only to the land.

There is no constitutional barrier to levying a tax on appellant's warehouse, and the statute is clear in authorizing the tax.

SHEPARD, J., concurs in the dissent.