CRAIG, STATE TAX COLLECTOR, v. INGALLS SHIPBUILDING CORPORATION.

(In Banc.  Jan. 26, 1942.)

[5 So. (2d) 676.  No. 34786.]

J. F. Galloway, of Gulfport, for appellant.

**Ford & Ford,** of Pascagoula, and **D. W. Strickland,** of Birmingham, Alabama, for appellee.

**Anderson, J.,** delivered the opinion of the court.

The appellee, a shipbuilding corporation, has its ship-building plant in this state in the City of Pascagoula, Jackson County. On the 1st day of January, 1940, it was and had been for some time engaged in building four ships for the Federal Government under contracts with the United States Maritime Commission, an arm of the Federal Government. The ships were being built under what is commonly known as cost-plus contracts, and for the building and completion of each the shipbuilding corporation was receive approximately $2,500,000. On the 1st of January, 1940, some of the ships were partially constructed. They consisted of hulls and parts assembled to go into their construction. The corporation had not made returns for state-county and municipal assessments for ad valorem taxes. The State Tax Collector, becoming aware that such had not been done, applied to and had the tax assessing officers of the county and municipality to assess the property. That was done. The assessment was for $27,720. (The municipal assessment is not involved here but is pending in the court below awaiting the result of this appeal.) The corporation made objections to the assessments before the board of supervisors, which were sustained and the assessments set aside. From that judgment of the board, the State Tax Collector appealed to the circuit court, in which court the action of the board of supervisors was affirmed. From that judgment, this appeal is prosecuted by the State Tax Collector. The cause was tried in the circuit court on the assessment made by the County Assessor, the proceedings before the board of supervisors and agreed facts, and a copy of the shipbuilding contracts involved and photographs showing hulls of the ships and property assembled to go into their building. The parts of the shipbuilding contract necessary to have in mind in considering the case are:

"Article 23: Title. The title to all materials, equip-

ment, supplies, and all other property assembled at the Contractor's plant or elsewhere for the purpose of being used for the construction of the vessel as well as title to the vessel itself, on account of which payments are made shall immediately be vested in the Commission: Provided, however, that nothing herein contained shall be construed as a waiver by the Commission of its right to require the Contractor to replace, at Contractor's expense, unsatisfactory workmanship or materials as herein provided: .Provided further, that the Contractor shall have an equity in any such material, equipment, supplies, and other property to the extent that it may not have been fully paid for by the Commission.

"Article 24: Taxes. The Contractor shall pay all United States, State, County, and City or other taxes, assessments or duties lawfully assessed against the vessel, materials, supplies or equipment to be used under this contract prior to delivery thereof to the Commission."

It will be observed that Article 23 provides that the title to all materials, equipment, supplies and other property assembled at the contractor's plant for the purpose of construction of the vessels, as well as title to the vessels themselves, shall immediately be vested in the Commission. That means, of course, vested in the Commission as the property of the Federal Government. That was the state of the title at the time the assessments were made.

The question is whether the state has the power to tax property belonging to the Federal Government. If a state statute denying such power was necessary, it is found in Division (b) of Section 3108, Code of 1930, which is in this language: "The following shall be exempt from taxation: . . . All property, real or personal belonging to the United States." The State Tax Collector, to sustain his contention, relies largely on the recent case of State of Alabama v. King & Boozer, 62 S. Ct. 43, 86 L. Ed. ——. That case is not decisive of the question. It was a sales tax case. The Alabama Sales Tax Statute,

Code 1940, Tit. 51, section 752 et seq., was there involved. King & Boozer had a contract with the Federal Government to build an army camp in the State of Alabama. Under the law, they were liable for the sales tax on the materials purchased by them which went into the construction of the plant. This tax was considered as a part of the cost of the construction, and in that way became a part of the contract price which the Government agreed to pay. The question was whether or not thereby the sales tax became a tax on Federal property. The court held it was not. Here, we have a direct tax on Federal property. It is not a tax exacted of the contractor and by the latter paid and added to his contract price.

It will be observed that Article 24 of the contract provides that the shipbuilding corporation should pay all taxes, state-county, city and Federal, assessed against the ships, materials, supplies and equipment being used in their construction prior to their delivery to the Maritime Commission. That article of the contract has no application where the ships and materials have been delivered to the Maritime Commission, which, as shown above, was true in this case. Doubtless, the parties to the contract had in mind that some of the materials going into the construction of the ships might come into the plant subject to tax liens arising elsewhere. The contractor was due to free them from such taxes before they went into the construction.

Affirmed.