Stewart, J.
 

 Five errors are listed in the assignment of errors filed in this court by Wright and they may be combined to present three propositions.
 

 As to the first and second assigned errors, it is asserted that the decision of the board was unreasonable and unlawful in holding as a matter of law that it was without jurisdiction to consider the question of ownership of the manufacturing inventory returned by Wright in 1943 for the reason that a claim for deduction from net book value of the inventory had not been filed by Wright, with the return; and that the de
 
 *37
 
 “cisión of the board was unreasonable and unlawful because it failed to find and determine that amounts of ■manufacturing inventory returned by Wright in 1943 were the property of the government and Wright was •entitled to a refund of taxes paid by it with respect to ■such property.
 

 The third and fourth assigned errors relate to advance payments by the government to Wright. Wright ■contends that the decision of the board was unreasonable and unlawful in finding that the unliquidated balances as of December 31, 1941, and December 31,1942, •of advance payments made to Wright by the government were not accounts payable on demand or within ■one year from date of inception.
 

 The fifth error assigned relates to advance payments made by Wright to its subcontractors, and it is asserted that the decision of the board was unreasonable and unlawful in that, after determining that the unliqui-dated balances of advance payments made to Wright by the government were not accounts payable, the board failed to find and 'determine that the unliquidated balances as of December 31, 1941, and December 31, 1942, of advance payments made by Wright to •subcontractors were not accounts receivable upon demand or within one year from date of inception.
 

 We first give our attention to the claim embodied in the first and second assigned errors. The 1943 personal property return of Wright is the only one involved in connection with this claim. Is Wright entitled to a refund of the amount of taxes which it claims to have paid upon monthly inventories during 1942 upon property the title to which was alleged to be in the government?
 

 It will be recalled that Wright’s contract with the .government provided that title to all property upon which any partial payment or payments were made
 
 *38
 
 prior to the completion of the contract should in its-then condition vest in the government forthwith upon the making of any such partial payment or payments.
 

 Although it is conceded that it would be impossible-to physically segregate the property as between that' to which Wright had title and that to which the government had title, nevertheless it is claimed that a value in dollars separation could have been made at any time, and Wright claims further that the engines and' parts which it was manufacturing constituted fungible-goods and, therefore, a dollar separation was legal and' proper.
 

 We must bear in mind that in its 1943 tax return Wright voluntarily returned and paid the tax on all its inventory property, including that which it now claims belonged to the government. No claim was-made by Wright, at the time of making the return,, that the return it made or the tax it paid was not accurate, true and correct. The commissioner did not change the inventory return in any way except to-add an additional tax of $381.31, which exact amount was taken oft by the board, so that in the appeal before this court the 1943 return of inventory of 1942 is.exactly as Wright voluntarily made it without any denial of its accuracy.
 

 The board held that the commissioner and, therefore, the board had no jurisdiction to consider this-claim of Wright. The board acted upon the theory that such claim was an attempt to obtain deductions-from depreciated book value of personal property,, and that, therefore,' the claim was governed by Section 5389, General Code, which reads in part: “Claim for any deduction from
 
 *
 
 * * depreciated book value of‘ personal property must be made in writing by the-taxpayer at the time of making return * * It is conceded there is no evidence of any such statutory-
 
 *39
 
 ■claim (popularly designated as a “902 claim”) having -been made by Wright with its 1943 return.
 

 In the case of
 
 Willys-Overland Motors, Inc.,
 
 v.
 
 Evatt, Tax Commr.,
 
 141 Ohio St., 402, 48 N. E. (2d), 468, the "third paragraph of the syllabus reads:
 

 “The Tax Commissioner is without jurisdiction to ■entertain a claim for any deduction from depreciated book value of personal property used in business unless the claim for such deduction was made in writing by the taxpayer at the time of making the return. (Section 5389, General Code; 116 Ohio Laws, pt. 2, 253; 118 Ohio Laws, 657; 119 Ohio Laws, 38.) ”
 

 Wright urges that in seeking the refund herein in■volved it is not making a claim for any deduction from "the net book value of its personal property but is seeking a refund for taxes it paid upon the property of mnother.
 

 In the case of
 
 Howe
 
 v.
 
 City of Boston,
 
 61 Mass. (7 Cush.), 273, the Supreme Judicial Court of Massachusetts held:
 

 “Where a person, who is liable to be taxed in a city ■or town for any real estate, is overtaxed by the assessors, whether the excess is caused by too high a valuation of real estate for which he is liable to be assessed, •or by including in the valuation estates for which he is not liable, his only remedy is by application to the .assessors for an abatement.”
 

 In the
 
 Howe case,
 
 an action was brought to recover so much of the tax paid by the plaintiff on real estate as was assessed on 16 lots of land which were claimed to be the property of the United States and so, by law, exempt from taxation. The court held that if one were taxed on property which was wholly the property of another, so that the whole tax was invalid, the entire tax might be recovered in an action, but the rule is ■different where one is rightfully taxed for any prop
 
 *40
 
 erty and there is an excess of taxation whether the excess arises from including in the valuation property of which the person taxed is not the owner and for which he is not liable to be assessed, or from placing an undue and disproportionate value on that property of which he is the owner.
 

 It is true that there was a growl at the holding in the
 
 Howe case
 
 by Judge Knowles of the United States-Circuit Court in Montana, in the following language
 

 “And the court seems disposed to adopt the rule in. Massachusetts that, where a man is assessed upon property he does own and on the property he does not own, it is simply an overvaluation of property he does-own. If this rule was not sustained by a long line of decisions, rendered by most able and justly distinguished jurists in that state, it would not commend itself very strongly to the legal profession.”
 
 Powder River Cattle Co.
 
 v.
 
 Bd. of Commrs. of Custer County,
 
 45 F., 323.
 

 The commissioner contends that, for additional reasons, Wright is not entitled to the refund for taxes claimed to have been paid upon government property. It is pointed out that by virtue of Section 5394, General Code, the taxpayer has a right to a review and redetermination by the commissioner “whenever the assessor shall assess any property not listed in or omitted from a return, or whenever the assessor shall assess any item or class of taxable property listed in a return by the taxpayer in excess of the value or amount thereof as so listed, or without allQwing a claim duly made for deduction from the net book value of accounts receivable, or depreciated book value of personal property used in business, so listed * *
 

 The section proceeds with provisions for a hearing- and reads further: “Upon such hearing the commissioner may make such correction in the assessment,
 
 *41
 
 including any penalty, as he may deem lawful and proper or he may affirm the assessment. ’ ’
 

 It is contended, and the statute bears out the contention, that an application for review and redetermination involves a hearing only with reference to the assessment of a tax on any property not listed in or omitted from a return, an increase in the value of the property listed in the return, or where a claim duly made for deduction from book value, or depreciated book value, has been refused.
 

 In the appeal before us there is no question of the assessment of a tax on any inventory which was not listed in or was omitted from Wright’s return, or no ■question as to an increase in the value of the property listed, or, since none was made, no claim for deduction from book value which was refused.
 

 Wright has attempted to have a review and redetermination of the assessment on its 1943 return of inventory, because of its own error or mistake. Section 5394, General Code, gives the commissioner no authority to do so in the absence of the filing of a “902 ■claim.”
 

 Under Section 5395, General Code, the commissioner does have authority to finally assess taxable property, and for such purposes he may utilize all facts and information coming to his knowledge or which he may acquire by the exercise of the powers vested in him by law. Although such power apparently is permissive, it would seem proper for a taxpayer who claims to be aggrieved to apply for its exercise in his behalf. No such application was made by Wright.
 

 We come now to a decisive factor in the solution-of this problem.
 

 It is contended by Wright that title to all property upon which any partial payment had been made prior to the completion of the contract vested in the govern
 
 *42
 
 ment, and that Wright should have a refund for the-taxes it paid upon that part of Its inventory; and that while it could not physically segregate unfinished engines as to ownership in itself and in the government,, nevertheless, the engines and parts' were fungibles and there could be a value or dollar separation made-at all times:
 

 Against this contention the commissioner argues-that, although courts will place upon a contract the construction which the parties to the contract have-placed thereon, that construction is binding only upon-such parties and not upon a third person. Therefore, it is argued that the construction which either the-government or Wright may have placed upon the contract between them is not binding upon the states With this contention we agree. It follows that Wright, having in 1943 returned all the 1942 inventory as its-own, not being able to physically separate the property which was claimed to have a divided ownership,, cannot make a dollar separation of the property unless it is in fact fungible property. The question for decision is: ■ Did the aeronautical engines and parts manufactured by Wright under its contract with the government constitute fungible property?
 

 Section 8456, G-eneral Code, provides,
 
 inter alia,
 
 “ ‘fungible goods’ means goods of which any unit is-from its nature or by mercantile usage treated as the-equivalent of any other unit. ’ ’ The ordinary examples-of fungible goods are such substances as grain, flour,, oil and other liquids.
 

 It was held by the United States District Court of the Western District of Washington that, under the-Washington statute, cases of canned salmon are fungible goods, each unit of which is equal to others, and' that under the statute warehouse receipts for a specific number of cases out of a larger mass are valid!
 
 *43
 

 Standard Bank of Canada
 
 v.
 
 Lowman,
 
 1 F. (2d), 935.
 

 In the case of
 
 Horn
 
 v.
 
 Klatt.
 
 65 Cal. App. (2d), 510, 151 P. (2d), 149, the First District Court of Appeal of ■California held that certificates of shares of corporate ;stock are fungibles and that a pledgee converting such pledged certificates can make restitution to a pledgor by substituting other similar certificates.
 

 We hold, however, that to consider aeronautical airplane engines as fungibles would be stretching the rule too far. It is true that their parts are interchangeable, and that one engine is very like the other, ■but it is a matter of common knowledge that engines, whether aeronautical, automobile or other kind, even though supposedly interchangeable, do behave differently and are different in their action. The difference may not be pronounced but it is there. This is not only true generally, but in the present case the record shows that from time to time there were mechanical changes made in the engines, although the same basic engine was being manufactured at all times. It would follow from these observations that all the engines which were manufactured were not exactly the same.
 

 Since Wright made no claim for deduction under Section 5389, General Code; since it made no application for a final assessment under Section 5395, General Code; since Section 5394, General Code, provides for a review and redetermination only where property has been assessed which was not listed in or omitted from a return, or the value of the property listed has been increased, or a claim duly made for deduction from book value, or depreciated book value, has been refused, and Wright’s claim does not come under any ■of these categories; and since we hold that the aeronautical engines and parts involved herein are not fun■gibles, the board’s action in refusing a refund to Wright for the payment of taxes on property, the title
 
 *44
 
 of which was claimed to be in the government, was not unreasonable or unlawful.
 

 We are not unmindful of the broad powers given to the commissioner by Section 1464-3, General Code,, but the voluntary inventory return by Wright in 1943, when it must have known its contractual rights for nearly two years, without any claim that any part of its inventory belonged to the government, until after it had been assessed for omitted credits, does not make-the action of the commissioner unreasonable.
 

 In two cases which are not in the briefs of either party in the present case, no taxes were finally assessed on goods claimed to belong to the government-under contracts similar to the ones involved herein. Those cases are
 
 Craig, Tax Collector,
 
 v.
 
 Ingalls Shipbuilding Corp., 192
 
 Miss., 254, 5 So. (2d), 676, and
 
 Douglas Aircraft Co., Inc.,
 
 v.
 
 Byram, Tax Collector,
 
 57 Cal. App. (2d), 311, 134 P. (2d), 15.
 

 In both those cases, however, the assessments of taxes against those who had construction contracts with the government were disputed from the start, and no returns of claimed government owned property were ever made by the contractors. In the present case, if Wright had omitted from its return the property which it now claims belonged to the government,, or had filed a “902 claim” with its return, a different question would be presented to us.
 

 We come now to the problem presented by the third' and fourth assigned errors.
 

 On the audit of Wright’s 1942 return, an increased tax assessment was made, of which $9,273.44 was based' on the failure of Wright to return credits for taxation. On the audit of the 1943 return, an increased tax assessment was made, of which $23,727.56 was based on the failure of Wright to return credits for taxation.. Whether these amounts were properly assessed de
 
 *45
 
 pends upon the answer to the question whether unliquidated balances of advance payments may be considered as current accounts payable. If they are current accounts payable, then the increased assessments for both years .were illegal, but if they were not current accounts payable -such assessments were proper.
 

 As hereinbefore stated, the contract between Wright and the government provided that the government should from time to time make advance payments to Wright upon the terms set out in the contract. The effect of these advance payments was to furnish working capital to Wright for the enormously expensive contracts which Wright was undertaking, and the advance payments were to be liquidated by Wright by the manufacture and production of aeronautical engines.
 

 There can be no question that it was the primary intention of both Wright and the government that the advance payments were to facilitate the production of engines and were not merely loans to be repaid in money. However, since there were various conditions in the contracts, as we have shown in the statement of facts, under which the government had the right to require Wright to repay in cash any unliquidated portions of the advance payments, and since the government had also the right to cancel its contract with Wright, even though Wright should not be in default, it is the claim of Wright that at all times the unliquidated portions of advance payments to it by the government constituted current accounts payable. As a result, the unliquidated portions of the advance payments, which appeared as current accounts payable on Wright’s books on December 31, 1941, and December 31, 1942, were entered by Wright on its tax returns as current accounts payable, under Section 5327, General Code, which reads in part as follows:
 

 
 *46
 
 “The term ‘credits’ as so used, means.the excess of the sum of all current accounts receivable and prepaid items used in business when added together estimating every such account and item at its true value in money, over and above the sum of current accounts payable of the business, other than taxes and assessments. ‘Current accounts’ includes items receivable or payable on demand or within one year from the date of inception, however evidenced. ’ ’
 

 If the unliquidated portions of the advance payments were current accounts payable, they would have exceeded Wright’s current accounts receivable on December 31, 1941, and December 31, 1942, and the increased assessments which we are now discussing would have been illegal.
 

 We are of the opinion that this question has been settled in Ohio. In the case of
 
 Black-Clawson Co.
 
 v.
 
 Evatt, Tax Commr.,
 
 139 Ohio St., 100, 38 N. E. (2d), 403, the syllabus reads:
 

 “Advance payments made by the buyer upon the purchase price of a machine to be constructed or under construction but not completed,-may not be listed by the seller-manufacturer as ‘accounts payable’ and deducted from the sum of ‘accounts receivable and prepaid items’ in determining credits as defined in Section 5327, G-eneral Code.’’
 

 . Wright recognizes the force of the
 
 Blach-Clawson
 
 precedent, but argues that the decision in that case was based upon the principle that the right of the customer, who made the advance payment, to recover ¡back the unliquidated portion of it depended upon a ¡breach of contract by the manufacturer-seller and •.that there could be no subsisting liability until the breach occurred.
 

 Wright argues further that in the present case the» government had the right to cancel its contract with
 
 *47
 
 Wright and receive back at any time the unliquidated portions of the advance payments, and that, therefore, the right of the government in the unliquidated amounts constituted practically a demand obligation.
 

 We do not agree with this contention. The advance payments were not a loan within the contemplation of the parties. As was said, the payments were unquestionably made with the idea of furnishing required capital to Wright so that the war needs of the government might be fulfilled as expeditiously and efficiently as possible. We were engaged in the greatest war in all history and what the government wanted and required was not a return of the advance payments but aeronautical engines to liquidate those payments as fast and efficiently as Wright could perform its contract. Wright contends that, if the government had a right to demand the payments, it made no difference that it did not do so, but- we are of the opinion that the fact that no demand for the return of the money was ever made by the government does have some bearing upon the proposition that it was engines and not money which was in the contemplation of the government.
 

 There can be no question that the unliquidated advance payments were current liabilities of Wright, but that does not mean they were current accounts payable.
 

 In the excellent concurring opinion of Judge Turner in the
 
 Black-Clawson case, supra,
 
 he cited several authorities on accounting and on page 109 he quoted from Bliss in Management Through Accounts, as follows:.
 

 “ ‘Generally these deposits or advances from customers should be treated as
 
 current liabilities
 
 and', shown as a separate item in that section of the balance sheet.’ ”
 

 Then follows a persuasive sentence by Judge
 
 *48
 
 Turner: “This is far from saying that these items should be treated as current accounts payable.”
 

 Prior to its amendments in 1931 (114 Ohio Laws, 717) and 1933 (115 Ohio Laws, 553), Section 5327, General Code, read:
 

 “The term ‘credits’ as so used, means the excess of the sum of all legal claims and demands, whether for money or other valuable thing, or for labor or service due or to become due to the person to pay taxes thereon, including deposits in banks or with persons in or out of the state, other than such as are held to be money, as hereinbefore defined, when added together estimating every such claim or demand at its true value in money, over and above the sum of legal bona fide debts owing by such person.” (110 Ohio Laws, 23.)
 

 In the present statute in place of the term, “over and above the sum of legal bona fide debts,” we have, “over and above the sum of current accounts payable. ’ ’
 

 Judge Turner in his concurring opinion in the
 
 Black-Clawson case, supra,
 
 said that he agreed, as we do now, with the comment of the editor of Page’s Ohio General Code, in the annotation to this section as follows:
 

 “The definition of credits by the amendment to this section has been revised so as to narrow its scope as to business accounts, also, to eliminate a certain overlapping with investments under certain circumstances and, further, to prevent fictitious deductions.”
 

 In view of all the circumstances of the present case and in view of the decision of this court in the
 
 Black-Clawson case, supra,
 
 we cannot say that the action of the board was unreasonable or unlawful in holding that the unliquidated portions of the advance payments made by the government to Wright were not
 
 *49
 
 current accounts payable, under Section 5327, General Code.
 

 This brings us to a consideration of the fifth and last assigned error. It appears that Wright made advance payments to its subcontractors under arrangements similar to those by which it received advance payments from the government, and that Wright carried the unliquidated portions of such advance payments upon its books as current accounts receivable, just as it carried the advance payments to it from the government upon its books as current accounts pay- . able.
 

 Wright now contends that if the unliquiated portions of the advance payments to it from the government were not current accounts payable within the purview of Section 5327, General Code, by the same token the unliquidated portions of the advance payments made by Wright to its subcontractors should not be held to be current accounts receivable.
 

 We think this argument is unanswerable. As Judge Turner said in the
 
 Black-Clawson case, supra,
 
 “accounts payable are the reverse of accounts receivable.”
 

 It would seem not only a dictate of logic but of common sense that if the unliquidated advance payments received by Wright were not current accounts payable, assuredly unliquidated advances made by Wright, under a like arrangement as it received advance payments, could not possibly be classed as current accounts receivable. Therefore, we hold that the decision of the board, so far as it included as current accounts receivable the items of $3,075,370.43 for 1942 and $671,133.76 for 1943, representing, respectively, unliquidated portions of the advance payments made by Wright to its subcontractors as of December 31, 1941, and December 31, 1942, to be both unreasonable and unlawful.
 

 
 *50
 
 The decision of the board is affirmed so far as it denied a refund to Wright for taxes paid upon property allegedly belonging to the government and so-far as it denied Wright’s claim that the unliquidated' portions of advance payments by the government to-Wright were current accounts payable, under Section 5327, General Code, but is reversed as to its denial of Wright’s claim that the unliquidated portions of the advance payments made by Wright to its subcontractors were not current accounts receivable, under such-section, and the case is remanded to the Board of Tax. Appeals for a modification of its decision, in. accordance with this opinion.
 

 Decision affirmed in part and reversed in part.
 

 Weygandt, C. J., Hart and Zimmerman, JJ., concur.
 

 Turner and Taut, JJ., not participating.