785 F.2d 308
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
WILLARD GATES, Plaintiff-Appellant,
v.
ARTHUR NEY, JR.; WARNER AMEX CABLE COMMUNICATIONS, INC.;
WARNER AMEX CABLE COMMUNICATIONS OF CINCINNATI,
INC., Defendants-Appellees.
 85-3110
 United States Court of Appeals, Sixth Circuit.
 1/9/86
 
 Before: ENGEL, KENNEDY, and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-Appellant, a cable television subscriber, appeals from a summary judgment in his suit challenging the constitutionality of a 'statement' that was signed by the local cable company and the local prosecuting attorney and attached to the prosecutor's entry of dismissal of an indictment against the cable company. Plaintiff argues that the statement, which arguably purports to restrict the editorial discretion of the cable company in exchange for the prosecutor's dismissal of an obscenity indictment previously obtained by him, violates plaintiff's constitutional right to receive information as well as the cable company's right of free speech. The suit was brought against the prosecutor and the cable company seeking declaratory and injunctive relief.
 
 
 2
 Warner Amex Cable Communications of Cincinnati (Warner Amex) operates the cable television service for Cincinnati, Ohio, pursuant to a franchise agreement with the City of Cincinnati. Between May 1 and May 17, 1983, Warner Amex cablecasted two unrated movies, 'The Opening of Misty Beethoven' and 'Maraschino Cherry,' on the Playboy Channel, one of the pay channels offered to Warner Amex subscribers.[1] On June 13, 1983, a Hamilton County grand jury returned an indictment against Warner Amex charging it with pandering obscenity, see Ohio Rev. Code Ann. Sec. 2907.32 (Page 1982), for having shown the two films. Warner Amex and the Hamilton County, Ohio, prosecutor, Arthur Ney, Jr. (Ney), entered into negotiations. The two parties then appeared before the Hamilton County Court of Common Pleas-Judge Robert S. Kraft, presiding--to enter an appearance of record. At that time, Ney presented to the court an entry of dismissal, which he requested the court to place on the record.[2] Ney also asked the court to keep a copy of a statement--signed by Ney and Warner Amex's representative--attached to the recorded entry.[3] Judge Kraft honored Ney's unopposed requests.
 
 
 3
 Plaintiff-Appellant, Willard Gates (Gates), subsequently filed suit in the United States District Court for the Southern District of Ohio, pursuant to 42 U.S.C. Sec. 1983, challenging the validity of the statement on first and fourteenth amendment grounds. The District Court entertained cross motions for summary judgment and entered judgment in favor of both defendants--Ney and Warner Amex. Gates appeals that judgment. We affirm the judgment below because we hold that, as a matter of law, the statement does not offend the rights of Gates or Warner Amex.
 
 
 4
 The premise behind Gates' complaint is that the prosecutor has an enforceable right to prevent Warner Amex from showing constitutionally protected (i.e., non-obscene) programs to its viewers. Appellees strenuously insist that the statement at issue does not give the prosecutor that right.
 
 
 5
 First, appellees point to two references in the statement to state and federal law. They explain that such references limit the effect of the statement to a requirement that Warner Amex not violate applicable obscenity statutes--in this case, Ohio's Act, see supra p. 2. Thus, under appellees' interpretation of the statement, Warner Amex has agreed only to obey a statute that has survived constitutional challenge, see Sovereign News v. Falke, 674 F.2d 484 (6th Cir. 1982).
 
 
 6
 Second, appellees insist that the statement does not give Ney any enforceable rights. Rather, the references to X-rated material are merely part of a public declaration of Warner Amex' policy, effective at the time the statement was signed, of not showing X-rated material on its channels. According to this interpretation, Warner Amex is free to change its policy in the future.
 
 
 7
 It is undisputed that either interpretation offered by appellees, if accepted by this Court as the correct interpretation, would result in dismissal of Gates' claim. Thus, the ultimate issue in this case is whether we can accept such interpretations.
 
 
 8
 If we were attempting to determine the meaning of the statement solely by reference to the conduct of the parties before signing the statement and the language they used, we would find it difficult to accept the proposed interpretations. In this case, however, the parties to the statement--Warner Amex and the prosecutor--agree that the statement should be read such that it does not interfere with Warner Amex' freedom to show non-obscene material.
 
 
 9
 In interpreting ambiguous contracts, Ohio courts will adopt a construction adhered to by both parties after they entered into the contract. Condon v. The H. C. Hazen Contracting Co., 122 Ohio St. 100, 113 (1930); Kling, Adm'r v. Bordner, 65 Ohio St. 86, 103 (1901). This interpretation of the parties will bind only the parties themselves, however. Wright Aeronautical Corp. v. Glander, 151 Ohio St. 29, 42 (1949). The parties to the statement agree that it is merely a public declaration of Warner Amex' 1983 policy and that it only prohibits Warner Amex from violating Ohio's obscenity statute. Thus, following Ohio law, we hold that these interpretations are the correct ones.
 
 
 10
 Gates contends that the interpretation of the statement cannot be left to appellees. He notes that the Ohio Court of Common Pleas approved the statement and entered it into its records, thus making the statement an order of the court subject to the court's interpretation. Although under Ohio law Ney required the permission of the court to dismiss the indictment, the dismissal was at the prosecutor's request. The court merely entered the dismissal in the court records along with a copy of the statement signed by appellees. This does not make the statement a court order. The court was not a party to the statement.
 
 
 11
 The rule of interpretation applied in this case effectively ensures that the statement will not interfere with the first or fourteenth amendments. The only party entitled to 'enforce' the statement--the Hamilton County prosecutor--is now bound by the interpretations argued to this Court and adopted by it. Thus, our holding permits Warner Amex to operate without fear that it will be sued for violating the terms of the statement.
 
 
 12
 Accordingly, we affirm summary judgment for defendants.
 
 
 
 [1]
 Pay channels are not part of the basic cable package. A subscriber can only receive these extra channels by paying a separate monthly fee. The Playboy Channel is an entertainment channel containing adult-oriented programming
 
 
 [2]
 The entry of dismissal read:
 HAMILTON COUNTY COMMON PLEAS
 THE STATE OF OHIO
 v.
 WARNER AMEX CABLE COMMUNICATIONS OF CINCINNATI, INC.
 No. B832255
 Charge: Possession of and/or pandering obscenity
 This day came the Prosecuting Attorney on behalf of the State, and in open Court, for good cause shown, with leave of Court, entered an entry of dismissal on the above indictment, for the reason as set forth in the attached statement.
 /s/ Arthur M. Ney, Jr.
 Prosecuting Attorney, Hamilton County, Ohio
 
 
 [3]
 The Statement reads, in its entirety, as follows:
 I, Richard Berman, as General Counsel and Assistant Secretary, for and on behalf of Warner Amex Cable Communications of Cincinnati, Inc., defendant herein, and a Senior Vice President and General Counsel for the parent corporation, Warner Amex Cable Communications, Inc., do hereby state that I have viewed tapes of 'Maraschino Cherry' and 'The Opening of Misty Beethoven' presented on May 16, 1983 in Cincinnati, Hamilton County, Ohio, on the Playboy Channel over the cable system owned by the said defendant, which activity was the subject of the within Indictment.
 In accordance with applicable State and federal laws, as of this date the defendant, Warner Amex Cable Communications of Cincinnati, Inc., with not present on any of its channels, including the Playboy Channel, in Hamilton County, Ohio, adult oriented sexually explicit movies, programs or otherwise, which are unrated and if rated would receive an X-rating in accordance with the Motion Picture Association of America (MPAA) guidelines, or those adult oriented sexually explicit movies, programs or otherwise which have not heretofore been rated by the Motion Picture Association of America (MPAA) as G., P.G., or R., applying its standards in effect as of June 15, 1983, or such future Motion Picture Association of America (MPAA) standards as are in accord with applicable State and Federal laws.
 In accordance with the above, and subject to the approval of the Court, the Prosecuting Attorney, Arthur M. Ney, Jr., will recommend dismissal with prejudice of the within Indictment and said Prosecuting Attorney further agrees to take no further legal action against the defendant corporation or its parent or its affiliates or their officers, directors or employees, with respect to the showing of the Playboy Channel between the 1st and 17th of May, 1983. Executed this 16th day of June, 1983, Cincinnati, Hamilton County, Ohio.
 WARNER AMEX CABLE COMMUNICATIONS OF CINCINNATI, INC.
 /s/ Arthur M. Ney, Jr.
 Prosecuting Attorney
 By: /s/ Richard Berman
 [Positions recited above].