[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 77.]

ASHLAND OIL COMPANY, INC., APPELLANT *v*. TRACY, TAX COMMR.,
APPELLEE.

[Cite as *Ashland Oil Co. v. Tracy*, 1995-Ohio-196.]

*Taxation—Personal property tax on oil inventory in storage tanks sold every ten*
*years—Oil refiner's valuation evidence before Board of Tax Appeals not*
*competent and probative to overcome the presumption in favor of the Tax*
*Commissioner's order, when.*

(No. 94-63—Submitted January 24, 1995—Decided April 26, 1995.)

APPEAL from the Board of Tax Appeals, Nos. 91-M-1379 and 91-M-1380.

_____

{¶ 1} Ashland Oil Company, Inc., appellant, for personal property tax years 1987, 1988, and 1989, challenges the Board of Tax Appeals' decision and seeks a lower value for the portion of its oil inventory it can sell only every ten years.

{¶ 2} Ashland refines and markets petroleum products. It stores its oil inventory in storage tanks on tank farms in Ohio. The storage tanks vary in type and construction, but all tanks are built with an outlet valve two feet above the floor of the tank, so that contaminants, such as water, rust, and gum, settle to the bottom, leaving the oil above the outlet valve uncontaminated. Ashland draws off the oil above the valve to sell. However, the oil below the valve, ("bottom oil") is unmarketable as retail oil without additional treatment.

{¶ 3} Ashland stores oil in some tanks with floating roofs. The roof is welded to pontoons that float on top of the oil, and the roof rides up or down with the level of the oil. Legs extend from the pontoons so that the roof will sit above the floor of the tank if all the oil should drain from the tank. Nevertheless, the space between the pontoon and the end of the legs always contains marketable oil ("safety

zone oil"), a condition the federal government requires as a safety measure; Ashland cannot immediately withdraw this oil to sell it.

{¶ 4} On a staggered schedule, Ashland removes all the oil from each tank every ten years to check the integrity of each tank and to clean and maintain it. At this time, Ashland can sell the bottom oil, for which it receives less than the cost of the oil, and the safety-zone oil.

{¶ 5} For the disputed tax years, Ashland valued all the oil inventory at cost and deducted three percent of total cost to account for the unmarketable bottom oil and the safety-zone oil, as it had done in previous years. However, the Tax Commissioner, appellee, added back the three percent deduction. The commissioner observed that the bottom oil had value and should be included in the inventory. He also concluded that the safety-zone oil was marketable, reasoning that it never contained the identical molecules of oil, since they were constantly being churned.

{¶ 6} Ashland appealed the commissioner's order to the Board of Tax Appeals ("BTA"). At the BTA, Ashland's witness, its manager of the petroleum measurement and quality control department, testified that the value of the bottom oil was ten to fifteen cents per gallon. Another witness, Ashland's manager of property taxes, an accountant, valued the bottom oil at thirteen cents per gallon and the safety-zone oil at cost, and then discounted, under the present worth method, both amounts at an annual capitalization rate of 9.5 percent over ten years.

{¶ 7} The BTA, reversing the commissioner's order in part, agreed with Ashland that the bottom oil was worth thirteen cents per gallon, but rejected the present-worth valuation. The BTA agreed with the commissioner that, due to the fluid nature of the oil, Ashland could not identify a "specific non-useable inventory." Furthermore, it found that Ashland had not related its discount method to its tank maintenance schedule. The BTA affirmed the commissioner's order with respect to the safety-zone oil.

2

**{¶ 8}** This cause is before this court upon an appeal as a matter of right.

_____

*William R. Buzo* and *Larry A. Carver; Jones, Day, Reavis & Pogue* and *Roger F. Day,* for appellant.

*Betty D. Montgomery*, Attorney General, and *James C. Sauer*, Assistant Attorney General, for appellee.

_____

*Per Curiam.*

**{¶ 9}** R.C. 5711.02 requires all taxpayers to file a return annually listing all taxable property. R.C. 5711.16 directs manufacturers and refiners on listing personal property and inventory:

"A person who purchases, receives, or holds personal property for the purpose of adding to its value by manufacturing, refining, rectifying, or combining different materials with a view of making a gain or profit by so doing is a manufacturer. When such person is required to return a statement of the amount of his personal property used in business, he shall include the average value, estimated as provided in this section, of all articles purchased, received, or otherwise held for the purpose of being used, in whole or in part, in manufacturing, combining, rectifying, or refining, and of all articles which were at any time by him manufactured or changed in any way, either by combining, rectifying, refining, or adding thereto, which he has had on hand during the year ending on the day such property is listed for taxation annually, or the part of such year during which he was engaged in business. * * *"

**{¶ 10}** Ashland argues that the present-worth method it presented to the BTA to value this disputed inventory, *i.e.*, the safety-zone oil and bottom oil, established the value of the inventory. The commissioner contends that this method was flawed. We agree with the commissioner.

**{¶ 11}** When a taxpayer challenges the commissioner's determination of value by appealing to the BTA, the taxpayer "*** has the burden to prove that the commissioner's valuation does not accurately reflect true value." *Snider v. Limbach* (1989), 44 Ohio St.3d 200, 201, 542 N.E.2d 647, 649. The taxpayer must present competent and probative evidence to show that the commissioner's determination of value is factually incorrect. *Hatchadorian v. Lindley* (1986), 21 Ohio St. 3d 66, 21 OBR 365, 488 N.E. 2d 145, paragraph two of the syllabus. The commissioner may also value property according to pre-determined formulae to ascertain value, but the commissioner must adjust the formulae "when special or unusual circumstances or conditions of use exist or when evidence shows that rigid application would be inappropriate." *Snider v. Limbach, supra,* at 201, 542 N.E. 2d at 649.

**{¶ 12}** First, whether Ashland can identify a specific inventory of oil to be valued under its approach is unimportant in this case. Oil is a fungible commodity, where "any unit is, by its nature or usage of trade, the equivalent of any other like unit." R.C. 1301.01(Q); *Wright Aeronautical Corp. v. Glander* (1949), 151 Ohio St. 29, 42, 38 O.O. 510, 516, 84 N.E.2d 483, 489. Consequently, Ashland need only quantify an amount of oil that it cannot sell but every ten years.

**{¶ 13}** Next, Ashland presents a plausible argument to value the disputed oil. It could sell this oil only after it drained the tanks to maintain them; this occurred every ten years. Thus, finding the present worth of the oil might be appropriate. According to Johnson, Mini-Math for Appraisers (1974) 23-24:

"Present worth tables are predicated on the principle that a payment due at some future time is worth less today and must therefore be discounted. One dollar payable one year from today, including 6% interest, is not worth $1 today. Precisely it is worth $0.9433962264; practically, it is worth 94 cents.

"Present Worth of 1 factors frequently are referred to as the reversionary factors. They are used in the property reversion (residual) technique and in any

4

valuation of a single terminal payment or worth. By use of the PW 1 factors one can value a single future income payment today, with rate, compounding interval, and *time period* given. A single 'lump sum' payment at a future date will return the original single capital investment plus accumulated compound interest, which is in reality deferred yield." (Emphasis added.)

**{¶ 14}** To its detriment, Ashland failed to take into account its staggered maintenance schedule. On each tax listing date, not all tanks will be drained in exactly ten years for Ashland to have access to the oil to sell it. According to the testimony, Ashland drained the tanks on a staggered basis; thus, the holding periods as of each tax listing date varied. Therefore, to calculate Ashland's inventory correctly, it needed to factor in the remaining holding period for each tank as of each specific tax listing date. Since the varied holding periods were not contained in the calculations, Ashland's valuation evidence was not competent and probative to overcome the presumption in favor of the commissioner's order.

**{¶ 15}** Accordingly, we affirm the BTA's decision because it is reasonable and lawful.

*Decision affirmed.*

Moyer, C.J., Douglas, Wright, Resnick, F.E. Sweeney, Pfeifer and Cook, JJ., concur.

_____