[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 297.]

ATS OHIO, INC., f.k.a. GELZER SYSTEMS COMPANY, APPELLANT, *v.* TRACY,

TAX COMMR. OF OHIO, APPELLEE.

[Cite as *ATS Ohio, Inc. v. Tracy*, 1996-Ohio-124.]

*Taxation—Listing personal property by manufacturer—Inventory in the process of manufacture, to the extent of progress payments received therefor, is not "owned" by the manufacturer and is not taxable to it as Schedule 3 personal property under R.C. 5711.16, when.*

Inventory in the process of manufacture, to the extent of progress payments received therefor, is not "owned" by the manufacturer and is not taxable to it as Schedule 3 personal property under R.C. 5711.16 when (1) the property exists and is identifiable, (2) the manufacturer collects progress payments from buyer over the course of production, and (3) the purchase contract includes an explicit agreement between manufacturer and buyer providing that title to the goods transfers incrementally to buyer.

(No. 95-1278—Submitted May 21, 1996—Decided August 14, 1996.)

APPEAL from the Board of Tax Appeals, No. 93-K-945.

———————————

{¶ 1} ATS Ohio, Inc. ("ATS"), f.k.a. Gelzer Systems Company, appellant, manufactures custom robotic equipment used by ATS's customers to manufacture their own end products. ATS determines the specifications and designs the equipment, working in conjunction with the buyer so that the finished product is best suited to the particular task or function required. Following the design phase, ATS prepares a price quotation which is sent to the buyer. The buyer responds by returning a purchase order to ATS, upon receipt of which ATS begins production of the equipment.

**{¶ 2}** The manufacturing process typically takes four to five months, and sometimes as long as a year. The average cost of a machine produced by ATS is $400,000 to $500,000. ATS requires its customers to make progress payments as work is completed on the project in order to even out its cash flow. The first payment is typically made following the design phase, and four more payments are made over the course of the production of the machine.

**{¶ 3}** The quotation issued by ATS sets forth a description of the equipment and the price and payment terms. The quotation form is fairly standard and normally specifies that progress payments, amounting to a percentage of the total purchase price, will be paid to ATS at predetermined times during the job.

**{¶ 4}** The purchase orders issued to ATS by its customers are not standard and do not contain uniform contractual terms and conditions. Some of the purchase orders received by ATS include language specifying details of the passage of title and the impact of progress payments while others do not.

**{¶ 5}** ATS uses the percentage of completion method of accounting for work in progress. For the 1990 and 1991 tax years at issue, ATS did not include the value of machinery in the process of manufacture as inventory on its Ohio personal property tax returns. ATS contends that upon receipt of the progress payments, title to the equipment passes to the customer.

**{¶ 6}** Upon audit, the agent for the Ohio Department of Taxation determined that ATS should have included the value of equipment in the process of manufacture on its tax returns and assessed ATS accordingly. ATS appealed the assessments to the Tax Commissioner, appellee, who affirmed the initial determination.

**{¶ 7}** ATS appealed the Tax Commissioner's decision to the Board of Tax Appeals ("BTA"), which affirmed the commissioner. It is from that decision that this appeal of right is taken.

————————————

*Squire Sanders & Dempsey* and *Ted B. Clevenger*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Thelma Thomas Price*, Assistant Attorney General, for appellee.

_____

**MOYER, C.J.**

**{¶ 8}** The issue before the court is whether equipment under production for which progress payments have been received constitutes inventory "owned" by the manufacturer for purposes of R.C. 5711.16 and is subject to inclusion on the manufacturer's return as personal property. For the reasons that follow, subject to limitations discussed *infra*, we answer the question in the negative, and we reverse the decision of the BTA and remand the cause for further factual findings.

**{¶ 9}** ATS argues that the equipment at issue is owned by the customer because ATS collects progress payments and accounts for the payments on a percentage of completion basis. The commissioner argues that ATS remains the owner of the work in progress and must return it as inventory on Schedule 3 of its personal property tax returns. The dispute focuses on the meaning of the word "owned" as used in R.C. 5711.16. The statute provides:

"A person who purchases, receives, or holds personal property for the purpose of adding to its value by manufacturing, refining, rectifying or combining different materials with a view of making a gain or profit by so doing is a manufacturer. When such person is required to return a statement of the amount of his personal property used in business, he shall include the average value, estimated as provided in this section, of all articles purchased, received, or otherwise held for the purpose of being used, in whole or in part, in manufacturing, combining, rectifying, or refining, and of all articles which were at any time by him manufactured or changed in any way, either by combining, rectifying, refining, or adding thereto, which he has had on hand during the year ending on the day such property is listed for taxation annually, or the part of such year during which he was

engaged in business.  He shall separately list finished products not kept or stored at the place of manufacture or at a warehouse in the same county.

"The average value of such property shall be ascertained by taking the value of all property subject to be listed on the average basis, *owned* by such manufacturer on the last business day of each month the manufacturer was engaged in business during the year, adding the monthly values together, and dividing the result by the number of months the manufacturer was engaged in such business during the year. The result shall be the average value to be listed.  A manufacturer shall also list all engines and machinery, and tools and implements, of every kind used, or designed to be used, in refining and manufacturing, and *owned or used* by such manufacturer."  (Emphasis added.)

**{¶ 10}** The first sentence of R.C. 5711.16 defines a "manufacturer" as one who "purchases, receives, or holds personal property for the purpose of adding to its value."  ATS clearly meets the definition of a manufacturer.  There is nothing in this definition, however, that requires the manufacturer to be the owner of the raw materials consumed in the manufacturing process.  Indeed the first paragraph of the statute states that the manufacturer shall include the "average value" of "all articles purchased, received, or otherwise held" for use in the manufacturing process.

**{¶ 11}** The second paragraph of the statute, however, sets out the means by which the average value is to be determined.   Property subject to inclusion in the manufacturer's average value determination is restricted to property "*owned* by such manufacturer." (Emphasis added.)

**{¶ 12}** The final sentence of the second paragraph states the rule for treatment of property other than inventory, including engines, machinery, tools, and implements on the tax return.  Instead of taxing only the items of property from this category that are owned by the taxpayer, R.C. 5711.16 provides that tax must be paid on items from the category that are "owned or used by such manufacturer." The language of the statute is precise.  The contrast between the provision that taxes

4

engines, machinery, and tools "owned *or used*" by a manufacturer, and the provision that taxes inventory-type property "owned" by the manufacturer manifests the intent of the General Assembly to treat the property differently. We conclude, therefore, that manufacturers such as ATS must return only the inventory personal property they own.

{¶ 13} This application of the statute is consistent with Ohio's general tax scheme. Ohio appears to have a pattern of taxing property owned by the taxpayer as opposed to property that is simply in the taxpayer's possession. See, *e.g.*, R.C. 5711.01(B) (defining "taxpayer" as "any *owner* of taxable property"); 5711.05 (stating that "[e]ach person shall return all the taxable property of which he is the *owner*"); R.C. 5709.01(B)(1) (defining all personal property used in business as taxable "regardless of the residence of the *owners* thereof"). (Emphasis added.)

{¶ 14} In *Consolidated Diesel Elec. Corp. v. Stamford* (1968), 156 Conn. 33, 238 A.2d 410, the Connecticut Supreme Court was to decide whether Consolidated, a government contractor operating under a contract with a title-vesting provision for progress payments, was an "owner" of the property. The relevant statute stated that the property of a manufacturer "shall be assessed in the name of the owner or owners." The contract provision at issue stated, "'Upon the making of any progress payments under this contract, title to all parts, materials, inventories, work in [process] and non-durable goods theretofore acquired or produced by the Contractor for the performance of this contract, and properly chargeable thereto under sound accounting practice, shall forthwith vest in the Government ***.'" *Id*. at 35, 238 A.2d at 411.

{¶ 15} The Connecticut court reasoned that when title vested in the government, it became the owner, and that title and ownership were the same thing. When title vested in the government, therefore, the manufacturer retained only the right to possession under the contract. Thus, the court concluded that the manufacturer was no longer the owner of the goods and was not subject to tax. *Id*.

at 37-38, 238 A.2d at 412. The state had apparently argued that the title-vesting provision served only for security purposes and did not affect the taxability of the property.

{¶ 16} In *Wright Aeronautical Corp. v. Glander* (1949), 151 Ohio St. 29, 38 O.O. 510, 84 N.E.2d 483, the issue whether inventory for which progress payments had been received was taxable to the manufacturer was presented and, although the case was decided on other grounds, we find guidance in the court's *dicta*. Wright had contracted with the government to build aircraft engines, using language in the contract that "title to all property upon which any partial payment is made prior to the completion of this contract, shall vest in the government ***." Id. at 33, 38 O.O. at 512, 84 N.E.2d at 486. Wright argued that after partial payment was received, the inventory corresponding to the payment belonged to the buyer and was not taxable to Wright. Because the issue had not been raised by Wright in its original return, the court did not consider the argument in reaching its judgment.

{¶ 17} The court observed, however, that had Wright presented its claim properly, "a different question would be presented to us." *Id*. at 44, 38 O.O. at 517, 84 N.E.2d at 490. The court then cited two cases, from California and Mississippi, in support of Wright's position. In *Douglas Aircraft Co. v. Byram* (1943), 57 Cal. App. 2d 311, 134 P.2d 15, Douglas sought a refund of tax assessed on inventory subject to progress payments under a contract specifically providing for incremental transfer of title corresponding to the receipt of payments. The court, relying on *Craig v. Ingalls Shipbldg. Corp.* (1942), 192 Miss. 254, 5 So. 2d 676, the other case cited in *Glander*, held that the state's suggestion that title did not pass because possession remained with the manufacturer did not withstand analysis. Both the California and Mississippi courts found that the equipment subject to the title-vesting provision had become government property, and therefore was not subject to taxation as property of the manufacturer.

6

**{¶ 18}** We have previously held that title-vesting provisions contained in government contracts are valid: "Pursuant to the agreements, the title to the tangible personal property which was created automatically vested in the government." *Dresser Industries, Inc. v. Lindley* (1984), 12 Ohio St.3d 68, 70, 12 OBR 60, 61, 465 N.E.2d 430, 432.

**{¶ 19}** In the case at bar, therefore, the critical question is whether title had transferred to the buyer with respect to those contracts under which the buyer had made progress payments to ATS during production of the purchased equipment.

**{¶ 20}** R.C. 1302.01(A)(8) provides: "Goods must be both existing and identified before any interest in them can pass. Goods which are not both existing and identified are 'future' goods." At the outset of the purchase process, the goods contracted for are future goods since ATS has not yet manufactured them. After production begins, the goods are clearly existing, and due to the detailed specifications prepared before production, and the unique nature of the product, the goods should be easily identifiable. R.C. 1302.42(A) provides that "title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties." Thus, if there is a written contract between ATS and its customer explicitly providing for transfer of title upon receipt of a progress payment, the parties have "explicitly agreed" and title passes in accord with R.C. 1302.42(A).

**{¶ 21}** In reaching its decision, BTA found that "the majority of purchase orders which are part of the record provide no indication that [ATS's] customers own or have a desire to own, the automated system prior to its completed state." At least one of the purchase orders at issue does state an explicit agreement that the customer owns the partially completed equipment to the extent of the value of progress payments made: "Title to the items and materials covered under this Purchase Order shall be deemed transferred to Buyer or Buyer's customer, as payments are made, and in the same proportion as the cumulative payments bear to

this Purchase Order price. Seller shall also identify and segregate such items and materials which are the property of Buyer, unless waived in writing by Buyer." Westinghouse Electric order dated July 24, 1990. In the absence of a finding by the BTA regarding which purchase orders contain explicit agreement on title transfer and which do not, we must remand the cause to the BTA to make the factual determination on a case-by-case basis.

{¶ 22} The BTA observed, "there is no indication that the progress payments, which are typically made in five equal installments, accurately reflect cost of the inventory at the time such payments are made." The commissioner argues that the payments therefore do not correspond to work actually performed on the project and that we should not attribute ownership based upon them. We conclude that this is another factual determination that must be made by the BTA on a case-by-case basis.

{¶ 23} The record contains documents showing the status of each contract on a month-by-month tracking schedule. Thus, for each contract with a title transfer agreement, there is an accounting which can be used to determine whether the entire dollar value of the progress payments made had actually vested in the buyer.

{¶ 24} In conclusion, we hold that inventory in the process of manufacture, to the extent of progress payments received therefor, is not "owned" by the manufacturer and is not taxable to it as Schedule 3 personal property under R.C. 5711.16 when (1) the property exists and is identifiable, (2) the manufacturer collects progress payments from buyer over the course of production, and (3) the purchase contract includes an explicit agreement between manufacturer and buyer providing that title to the goods transfers incrementally to buyer.

{¶ 25} The decision of the BTA is reversed, and the cause is remanded for further determinations consistent with this opinion.

*Decision reversed*
*and cause remanded.*

DOULGAS, F.E. SWEENEY, PFEIFER and STRATTON, JJ., concur.

RESNICK, J., concurs in the syllabus and judgment.

COOK, J., dissents.

_____

**COOK, J., dissenting.**

**{¶ 26}** I would affirm the decision of the BTA upholding the assessment of the commissioner because the taxpayer has failed to show a clear right to relief. *Belgrade Gardens v Kosydar* (1974), 38 Ohio St. 2d 135, 67 O.O.2d 147, 311 N.E.2d 1.

**{¶ 27}** This inventory "*held* for the purpose of being used, in whole or in part, in manufacturing" must be listed in a manufacturer's personal property tax return. R.C. 5711.16. I agree with the BTA that the focus by the parties on the phrase "owned by such manufacturer" is misplaced. The transfer of ownership is inapposite to the reality that this assessed property is necessarily "held" to be used by the manufacturer to finish this complex automated system.

**{¶ 28}** Even if ownership is the determinative issue, the taxpayer here has not demonstrated that a shift in ownership occurs concurrent with its receipt of progress payments (which the taxpayer identified as "advances" on its internal balance sheet). The purchase orders upon which the appellant and the majority rely are drafted by the various customers. Even those purchase orders that include terms as to ownership do not demonstrate the explicit agreement necessary to transfer title other than at the time of delivery. R.C. 1302.42(B). It seems unlikely that a customer would contract explicitly to acquire ownership of an incomplete complex manufacturing system in twenty-percent increments. Rather, the payments are, normally, just equal installments prepaying the purchase price. The taxpayer conceded at oral argument that no use can be made of a partially completed system. I also question the conclusion by the majority that, prior to completion,

these systems are "goods" that are "both existing and identified" and thus eligible for legal transfer, because neither party argued or briefed this point of law.

{¶ 29} Moreover, there is no evidence offered by the taxpayer to relate the five installment payments to the cost of the inventory at the time such payments are made.

{¶ 30} Other factors belying the taxpayer's position are that possession remains with the taxpayer until the completed system is delivered; that the taxpayer, at its cost, maintains insurance on the entire automated system during its manufacture; and that warranties do not begin until the system is delivered to the customer.

{¶ 31} I therefore respectfully dissent.

————————————